STATE of Delaware, Plaintiff,

v.

Andre Stanley DEPUTY, Defendant.
ID No. 88K00421DI.

Nos. IK79–11–0232R3 to IK79–11–
0235R3, IK79–03–0011R3 and
IK79–03–0013R3.

Superior Court of Delaware,
Kent County.

Submitted: June 19, 1994.
Decided: June 19, 1994.

Charles E. Butler, Thomas A. Stevens, and Paul R. Wallace, Deputy Attys. Gen., Dept. of Justice, Wilmington, for plaintiff State of DE.

Kevin J. O'Connell, and Paula G. Caputo, Wilmington, for defendant Andre Stanley Deputy.

## MEMORANDUM OPINION

RIDGELY, President Judge.

Defendant Andre Stanley Deputy ("Deputy") filed in this Court on June 17, 1994 a Third Motion for Postconviction Relief pursuant to Superior Court Criminal Rule 61 and a Motion for a Stay of Execution. Deputy is scheduled to be executed on June 23, 1994.

For the reasons that follow, the Court concludes that both motions must be denied.

### I. BACKGROUND

Deputy was convicted in February, 1982 of two counts of Intentional Murder, 11 *Del.C.* § 636(a)(1), two counts of Felony Murder, 11 *Del.C.* § 636(a)(2), one count of First Degree Robbery, 11 *Del.C.* § 832(a)(2), and one count of Possession of a Deadly Weapon During the Commission of a Felony, 11 *Del.C.* § 1447, for the deaths and robbery of Alber-

ta and Byard Smith.[1] After a penalty hearing, the jury sentenced Deputy to death for each of the four First Degree Murder convictions. On direct appeal, the Delaware Supreme Court reversed the Intentional Murder convictions, but affirmed the remaining convictions. *Deputy v. State*, Del.Supr., 500 A.2d 581, 592 (1985).

On July 29, 1987, Deputy filed with this Court his first motion for postconviction relief pursuant to Superior Court Criminal Rule 61. After amending his motion several times, Deputy submitted the final version on April 19, 1989. The Court conducted an eighteen-day evidentiary hearing in several stages between June and October of 1989. Following the hearing, the Court dismissed approximately 200 of Deputy's 286 claims and reserved judgment on the remaining claims. *State v. Deputy*, Del.Super., Cr.A. Nos. IK79–11–0232–0235R1, IK79–03–0011, 0013RI, Steele, J. (Dec. 12, 1989) Mem.Op. at 23–24, 1989 WL 158454. After briefing, the Court denied the remaining claims. *Id.* (Dec. 27, 1990) at 19. On appeal, the Delaware Supreme Court affirmed this Court's rulings. *Deputy v. State*, Del.Supr., No. 36, 1991, Christie, C.J. (Sep. 3, 1991) (Order) at 5, 1991 WL 181463.

On October 23, 1991, Deputy filed his first petition for writ of habeas corpus *pro se* in the United States District Court for the District of Delaware, pursuant to 28 U.S.C. § 2254. After the District Court appointed counsel, Deputy filed an amended petition, along with motions seeking leave for discovery, authorization of the hiring of a psychiatric expert, and expansion of the record. The United States Magistrate Judge recommended denial of the motions. *Deputy v. Taylor*, C.A. No. 91–543, Trostle, U.S.M.J. (Apr. 22, 1993). The District Court then dismissed the amended petition without prejudice because it contained both exhausted and unexhausted claims. *Deputy v. State*, D.Del., C.A. No. 91–543–LON, Longobardi, J. (May 28, 1993) (Order).

On July 9, 1993, Deputy filed in this Court a Motion for Appointment of Counsel and a Motion for a Stay of Execution. The Court denied Deputy's motions on July 30, 1993, but, because of a potentially valid constitutional claim asserted in the motion for a stay, the Court directed Deputy to file a second motion for postconviction relief on that single ground. Deputy filed a Second Motion for Postconviction Relief on August 2, 1993, which the Court eventually dismissed. *Deputy v. State*, Del.Super., Cr.A. Nos. IK79–11–0232–0235R1, IK79–03–0011, 0013R1, Steele, J., 1993 WL 332667 (Aug. 13, 1993) (Mem.Op. and Order). Deputy did not appeal this ruling to the Delaware Supreme Court.

Two days prior to this Court's denial of the Second Postconviction Relief Motion, Deputy filed his Second Habeas Corpus Petition in the United States District Court and renewed his earlier motions for discovery, authorization of psychiatric expert, and expansion of the record in that court. Deputy raised thirty-two grounds for relief in the petition, which the District Court denied. *Deputy v. Taylor*, D.Del., C.A. No. 93–387 LON, Longobardi, J., 1993 WL 643368 (Aug. 17, 1993) (Mem.Op. and Order). That same day, Deputy appealed the rulings on seven of those claims to the United States Court of Appeals for the Third Circuit. The next day, one day before Deputy's scheduled execution, the Third Circuit granted a stay of execution, pending review of Deputy's claims. On March 3, 1994, the Third Circuit denied Deputy's claims and lifted the stay. *Deputy v. Taylor*, 3d Cir., 19 F.3d 1485, 1502 (1994). Deputy then filed a Motion for Reargument with Suggestion for Rehearing *en banc*, along with an application requesting recall of the Mandate and a stay of any execution date this Court might set. The Third Circuit denied the motion and applications on April 1, 1994.

On August 18, 1993, Deputy filed an Application for Commutation of Sentence with the Delaware Board of Pardons ("Board"). The Board heard Deputy's application on April 28, 1994 and denied the request shortly thereafter. On May 11, 1994, this Court set a new execution date of June 23, 1994.

---

1. A comprehensive account of the facts leading up to conviction and sentencing can be found at the Delaware Supreme Court's opinion on direct appeal. *See Deputy v. State*, Del.Supr., 500 A.2d 581, 585–88 (1985).

Deputy filed a Petition for Writ of Certiorari in the United States Supreme Court on June 1, 1994. Contemporaneously, he filed a Motion for Stay of Execution in the Third Circuit Court of Appeals, pending the disposition of the Petition for Writ of Certiorari. The Third Circuit denied that motion on June 7, 1994. On that date, Deputy filed a Motion for Stay of Execution in the United States Supreme Court, which was referred to the Honorable David H. Souter, Associate Justice of the United States Supreme Court, and Circuit Justice for the Third Circuit. As of this writing, the United States Supreme Court has not yet ruled on Deputy's pending Petition for Writ of Certiorari and Motion for a Stay.

On June 17, 1994 at 6:00 p.m., Deputy filed his Third Motion for Postconviction Relief and a Motion for Stay of Execution in this Court. The parties have complied with the Court's directive that the State file its Answer no later than 6:00 p.m. on June 18, 1994, with Deputy's Reply due by 12:00 noon today.

## II. PROCEDURAL CONSIDERATIONS

■ Under Delaware law, the Court must first determine whether Deputy has met the procedural requirements of Superior Court Criminal Rule 61(i) before it may consider the merits of his postconviction relief claims. *Bailey v. State,* Del.Supr., 588 A.2d 1121, 1127 (1991); *Younger v. State,* Del. Supr., 580 A.2d 552, 554 (1990) (citing *Harris v. Reed,* 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989)). Under Rule 61, postconviction claims for relief must be brought within three years of their becoming available to the movant. Super.Ct.Crim.R. 61(i)(1). Further, any ground for relief not asserted in a prior postconviction motion is thereafter barred, unless consideration of the claim is necessary in the interest of justice. Super.Ct.Crim.R. 61(i)(2). Similarly, grounds for relief not asserted in the pro-

ceedings leading to judgment of conviction are thereafter barred, unless the movant demonstrates: (1) cause for the procedural default, and (2) prejudice from violation of the movant's rights. Super.Ct.Crim.R. 61(i)(3). However, these bars to relief are inapplicable to jurisdictional challenges or to colorable claims of miscarriages of justice stemming from constitutional violations that "undermined the fundamental legality, reliability, integrity or fairness of the proceedings leading to the judgment of conviction."

In addition, any ground for relief that was formerly adjudicated in the proceedings leading to judgment of conviction, in a prior postconviction proceeding, or in a federal habeas corpus proceeding, is thereafter barred from consideration, unless there was a "miscarriage of justice" of constitutional proportions. Super.Ct.Crim.R. 61(i)(4).

■ In this motion, Deputy challenges on several grounds the constitutionality of Delaware's statute which enables lethal injection to be used as the method of execution. *See* 11 *Del.C.* 4209(f) (the "Lethal Injection Statute"). However, Deputy was first sentenced to death in 1982. Delaware adopted lethal injection as an acceptable method of execution in 1986. *See* 65 *Del.Laws,* Chapter 281 (codified at 11 *Del.C.* § 4209). Prior to the 1986 enactment, hanging was the only method of execution in Delaware. Under the statute, all defendants first sentenced to die after June 13, 1986 are to be executed by lethal injection. *Id.* However, because Deputy's original sentence predates the current statute, he is given the option of affirmatively choosing lethal injection over hanging. 65 *Del.Laws,* Chapter 281, Section 3. If he fails to opt for lethal injection, hanging is the legislatively-specified procedure. *Id.* Pursuant to the statute, the Commissioner of the Department of Correction (the "Commissioner") has developed procedures for such election (the "Regulation").[2] The Regulation en-

---

2. The "Delaware Department of Correction Execution Election Regulation" reads in its entirety as follows:

  OBJECTIVE: This regulation provides for a Delaware inmate who is condemned to death to elect lethal injection as the method of execu-

tion if such an option is allowed in the Sentencing Order.
  ELECTION OPTION
  1. If the sentencing order allows the condemned inmate to elect lethal injection over hanging, the Warden shall:

ables the condemned inmate to sign an Election Affidavit, in the presence of the prison warden and a notary public, affirmatively choosing death by lethal injection over hanging. If no affidavit is signed, then hanging is the default method. Paragraph Five of the Regulation specifies that the election is irrevocable unless the inmate receives a stay of execution from a court of competent jurisdiction for 180 days or longer.

■ Deputy first elected lethal injection over hanging on August 13, 1993,[3] the same day upon which his Second Motion for Postconviction Relief in this Court was denied, and only six days prior to his scheduled execution date. Had he never signed such an affidavit, his scheduled method of execution would have been hanging. As such, Deputy was subject to Delaware's lethal injection beginning August 13, 1993. Given the Delaware case law on the issue of standing, Deputy lacked standing to object to Delaware's Lethal Injection Statute before signing the Election Affidavit. *See DeShields v. State,* Del.Supr., 534 A.2d 630, 639 (1987). Therefore, all of Deputy's challenges to lethal injection raised today are raised within three years of his first eligibility to do so, and thus are not barred by Rule 61(i)(1).

> a. provide the attached affidavit (Attachment 1) to the condemned inmate no later than 20 days prior to the date of execution set set [sic] by the Court.
> b. explain the affidavit to the condemned inmate. The inmate may consult with his/her legal counsel prior to signing the affidavit.
> 2. The affidavit shall provide the condemned inmate an opportunity to elect lethal injection as the method of execution.
> 3. If the condemned inmate does not sign the affidavit, the execution shall be hanging.
> 4. The affidavit shall be signed by the Warden and notarized.
> 5. The election shall be irrevocable. If a stay or respite of 180 days or more is granted, the condemned inmate shall be allowed a new election under this regulation.
> *See* Appendix to the Defendant's Memorandum of Points and Authorities in Support of Third Motion for Postconviction Relief (hereinafter Designated as "A–__") at A–14.

**3.** Deputy initially contended he lacked standing to challenge his execution by lethal injection until he signed the May 27, 1994 Election Affidavit. *See* Brief in Support of Third Motion for Postconviction Relief at 34. However, upon further direction by the Court to expand the record

■ Although this is Deputy's third motion under Rule 61, this is the first one he has filed while an election of lethal injection is in effect. As previously stated, the Commissioner's Regulation and the Election Affidavit provide the election is irrevocable unless a stay of execution of 180 days or longer is granted. However, under the Regulation a stay of 180 days or longer *does not automatically invalidate* a prior election; the provisions suggest only that a stay of that length enables the prisoner to change his or her selection which was previously irrevocable. Thus, it follows that, because Deputy has never revoked his first election made on August 13, 1993, that election has been in effect continuously through today. However, the procedures which trigger this election are within the sole province of the Commissioner, and the standard procedure apparently is to permit inmates sentenced prior to June 13, 1986 to complete a new affidavit after each stay of 180 days or longer has passed, whether the inmate has affirmatively revoked the prior election or not.

On May 27, 1994, 27 days prior to his currently scheduled execution, prison officials afforded Deputy the opportunity to once again elect lethal injection over hanging. On

with any prior Election Affidavits known to exist, Deputy and the State submitted the Election Affidavit of August 13, 1993. At 12:15 a.m. on this date, Counsel for the State represented as follows:

> Pursuant to the Court's order of June 18, 1994, I have asked the Department of Corrections to confirm that the Election Affidavits of August 13, 1993 and May 27, 1994 are the only Election Affidavits contained in the files of the Department of Corrections. At this time I am able to advise the Court that these are indeed the only two Affidavits on file with the Department.

Memorandum of Charles E. Butler, Esq., Deputy Attorney General, June 19, 1994. There is nothing in the record to explain the apparent delay in obtaining Deputy's initial Election Affidavit until August 13, 1993.

Had Deputy in fact elected lethal injection prior to either of his first two motions for postconviction relief, he would have been required to raise all current arguments against the Lethal Injection Statute in the first available motion, which would thereby have precluded the Court's review of his arguments today under the "Repetitive Motion" bar to relief. Super.Ct.Crim.R. 61(i)(2).

that date, Deputy did so. Thus, without ever having expressly revoked his August 13, 1993 affidavit, and by expressly opting for lethal injection on a second occasion, Deputy has had standing continuously since August 13, 1993 to raise constitutional challenges to Delaware's Lethal Injection Statute. He is not barred by the "repetitive motion" bar to postconviction relief contained at Rule 61(i)(2), because this is the first Rule 61 motion filed since obtaining that standing to object.

■ Additionally, Deputy is not barred by the "procedural default" bar of Rule 61(i)(3), because that bar prohibits the Court from addressing postconviction relief claims which could have and should have been raised in the proceedings "leading to the judgment of conviction." Super.Ct.Crim.R. 61(i)(3). Here, Deputy's conviction preceded the Lethal Injection Statute's enactment by four years. Thus, his claims against the statute are not barred today by Rule 61(i)(3).

■ Finally, Deputy's claims against the Lethal Injection Statute are not precluded by the "former adjudication" bar to relief in Rule 61(i)(4), because he has never raised these claims in any prior state or federal proceeding.

In addition to his claims against the Lethal Injection Statute, Deputy challenges the constitutionality of execution by hanging—the method of execution he is to receive should he prove that the Lethal Injection Statute is unconstitutional.[4] Therefore, his standing to object to hanging is dependent upon the Court's rulings on the Lethal Injection Statute's constitutionality. This will be addressed below.

Thus, with Deputy having standing to challenge the Lethal Injection Statute, and with no applicable procedural bars to relief, the Court must turn to the merits of Deputy's claims.

## III. DEPUTY'S CHALLENGES TO DELAWARE'S LETHAL INJECTION STATUTE

Deputy raises two constitutional challenges to Delaware's Lethal Injection Statute: (1) the Lethal Injection Statute is preempted by federal law, and (2) the statute violates the Eighth Amendment of the United States Constitution and Article 1, Section 11 of the Delaware Constitution. These claims will be addressed *in seriatim*.

### A. Federal Preemption

As previously stated, Delaware adopted lethal injection as the preferred execution procedure in 1986. *See* 65 *Del.Laws,* Chapter 281. The current statute reads in pertinent part as follows:

... Punishment of death shall, in all cases, be inflicted by intravenous injection of a substance or substances in a lethal quantity sufficient to cause death and until such person sentenced to death is dead, and such execution procedure shall be determined and supervised by the Commissioner of the Department of Correction. The administration of the required lethal substance or substances required by this section shall not be construed to be the practice of medicine and any pharmacist or pharmaceutical supplier is authorized to dispense drugs to the Commissioner or his designee, without prescription, for carrying out the provisions of this section, notwithstanding any other provision of law....

11 *Del.C.* § 4209(f).

■ Deputy contends Delaware's Lethal Injection Statute is preempted by federal law, and thus, is unconstitutional, because it permits correctional officers to obtain the controlled substances necessary for the execution in violation of the Federal Drug Abuse Prevention and Control Act, 21 U.S.C. Section 801 *et seq.* (the "DAPCA"), and the Federal Food, Drug and Cosmetic Act, 21 U.S.C. Section 353(b)(1) (the "FDCA"). The

---

4. Delaware's Lethal Injection Statute reads, in pertinent part, as follows:
    ... If the execution of the sentence of death [by lethal injection] as provided above is held unconstitutional by a court of competent juris-

diction, then punishment of death shall, in all cases, be inflicted by hanging by the neck.
    ....
11 *Del.C.* § 4209(f).

applicable portion of the DAPCA states in pertinent part:

> Except when dispensed directly by a practitioner, other than a pharmacist, to an ultimate user, no controlled substance in schedule III or IV, which is a prescription drug as determined under the Federal Food, Drug, and Cosmetic Act, may be dispensed without a written or oral prescription in conformity with section 503(b) of that Act.

21 U.S.C. § 829(b). Further, the FDCA states that certain drugs:

> shall be dispensed only (i) upon a written prescription of a practitioner licensed by law to administer such drug, or (ii) upon an oral prescription of such practitioner which is reduced promptly to writing and filed by the pharmacist, or (iii) by refilling any such written or oral prescription ...

21 U.S.C. § 353(b)(1).

Schedule III controlled substances include "any substance which contains any quantity of a derivative of barbituric acid, or any salt of a derivative of barbituric acid." 21 U.S.C. § 812, Schedule III, subpart (b)(1). Sodium pentothal, the drug most commonly used in lethal injection executions, and which Delaware uses, falls into this category of controlled substances. *See* Delaware Injection Team Procedures, § III.6.d. (describing sodium pentothal as a "Federally controlled drug") (A–29).

Based upon these federal provisions, Deputy argues Delaware's Lethal Injection Statute, which permits certain controlled substances to be dispensed to correctional officials without a prescription, is in direct violation of federal law. Consequently, he contends the Lethal Injection Statute is preempted by federal law and may not constitutionally be enforced against him because of the Supremacy Clause of the United States Constitution which states that "[the]

Constitution, and the Laws of the United States which shall be made in Pursuance thereof ... shall be the Supreme Law of the Land ..." U.S. Const. art. VI, Cl. 2.[5]

■■■ Deputy's contentions are without merit. Although, as a general principle, state laws which are inconsistent with federal law are preempted, the United States Supreme Court has held that the "basic underpinning" in any preemption analysis is whether the state regulation "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Louisiana Public Service Comm'n v. F.C.C.*, 476 U.S. 355, 374, 106 S.Ct. 1890, 1901, 90 L.Ed.2d 369 (1986) (citing *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941)). In *Maryland v. Louisiana*, 451 U.S. 725, 746–47, 101 S.Ct. 2114, 2128–29, 68 L.Ed.2d 576 (1981), the Supreme Court provided the focal point for reviewing seemingly inconsistent federal and state law when it stated that "consideration under the Supremacy Clause starts with the basic assumption that Congress did not intend to displace state law." *Id.* Thus, in determining whether a facially inconsistent state law violates the Supremacy Clause, the central question is that of Congressional intent behind the conflicting federal statute or regulation.

■■■ The federal DAPCA's "principal purpose" is "to deal in a comprehensive fashion with the growing menace of drug abuse." H.R.Rep. No. 91–1444, 91st Cong., 2d Sess. at 3 (1971), *reprinted in* 1970 U.S.C.C.A.N. 4566, 4567. Its aim is to prevent drug abuse, rehabilitate offenders, control the use of certain substances by individuals, and provide criminal penalties for violations. *Id.* at 4566–4660. One court has noted the DAPCA focuses on the "flow of drugs in an effort to stop diversion to illegal uses." *U.S. v.*

---

**5.** Deputy also directs the Court's attention toward the preemption clause expressly contained in the DAPCA, which states as follows:

> No provision of this subchapter shall be construed as indicating an intent on the part of the Congress to occupy the field in which that provision operates, including criminal penalties, to the exclusion of any State law on the same subject matter which would otherwise be

within the authority of the State, unless there is a positive conflict between that provision of this subchapter and that State law so that the two cannot consistently stand together.

21 U.S.C. § 903. However, for the reasons described *infra*, this clause does not prohibit the enforcement of Delaware's Lethal Injection Statute.

*Rosenberg,* 9th Cir., 515 F.2d 190, 193 (1975). Clearly, the act is geared toward the prevention of illicit uses of drugs by *individuals,* which tend to lead to other societal problems.

■ Similarly, but with an emphasis upon trade regulation, the FDCA's main purpose is to "prohibit the movement in interstate commerce of adulterated and misbranded foods, drugs, devices and cosmetics." *U.S. v. 1851 Cartons, Etc.,* 10th Cir., 146 F.2d 760, 761 (1945) (citing *U.S. v. Dotterweich,* 320 U.S. 277, 280, 64 S.Ct. 134, 136, 88 L.Ed. 48 (1943)). One federal court has recognized an additional purpose of the act—that of "protect[ing] public health." *U.S. v. Kordel,* 7th Cir., 164 F.2d 913, 917 (1947), *aff'd,* 335 U.S. 345, 69 S.Ct. 106, 93 L.Ed. 52 (1948). The Court is unaware of any judicial authority construing either the DAPCA or FDCA's purpose to include the prevention of lawful executions of inmates.

In contrast to the federal statutes' unmistakable concern over the deleterious effects of unregulated usage of controlled substances by individual citizens, Delaware's Lethal Injection Statute's single goal is merely to effect the execution of lawfully-condemned inmates. The statute permits one narrow and well-defined usage of certain controlled substances by state officials. It does not, by its terms or its intent, permit individuals to abuse controlled substances with impunity, nor does it endanger public health. The Lethal Injection Statute is aimed solely at carrying out the state's constitutionally-permissible goal of capital punishment for certain individuals. Thus, the statute in no way conflicts with the federal purposes behind the DAPCA and FDCA.

Further support for this conclusion is found in *Heckler v. Chaney,* 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985), in which the Supreme Court refused to review the Food and Drug Administration's ("FDA") decision not to take certain enforcement actions under the Administrative Procedure Act, 5 U.S.C. §§ 701–706 (the "APA"). In *Chaney,* a group of inmates unsuccessfully challenged the FDA's refusal to enforce the APA against states which use lethal injection procedures for executions. *Id.* at 838. Although the Court's holding focused upon the

Court's inability to review an administrative agency's decision not to act in an area within its authority, the Court acknowledged the FDA Commissioner's statement of purpose in not enforcing the federal regulations against the states. The Commissioner was quoted as saying:

Were FDA clearly to have jurisdiction in the area, moreover, we believe we would be authorized to decline to exercise it under our inherent discretion to decline to pursue certain administrative matters. The unapproved use of approved drugs is an area in which the case law is far from uniform. Generally, enforcement proceedings in this area are initiated only when there is a serious danger to the public health or a blatant scheme to defraud. *We cannot conclude that those dangers are present under State lethal injection law, which are duly authorized statutory enactments in furtherance of proper State functions ...*

*Id.* at 824–25 (emphasis added).

If, after *Chaney,* there were any remaining doubt whether DAPCA and FDCA are intended to prohibit executions by lethal injection, that doubt was dispelled when the federal government itself adopted lethal injection as the method of execution for certain federal offenses. *See* United States Attorney General Order No. 1634–92, 57 Fed.Reg. 56536, § 5 (1992) (codified at 28 C.F.R., part 26). In promulgating the new procedure less than two years ago, the Attorney General acknowledged the widespread usage of controlled substances in state-sponsored executions when he stated:

Lethal injection will be the method of execution. This method increasingly is the method of execution in the states.

57 Fed.Reg. 56536, § 3. Moreover, the federal execution method, as codified, is substantially the same as Delaware's, in stating that:

... a sentence of death shall be executed ... by intravenous injection of a lethal substance or substances in a quantity sufficient to cause death, such substance or substances to be determined by the Director of the Federal Bureau of Prisons

and to be administered by qualified personnel selected by the Warden and acting at the direction of the Marshal.

28 C.F.R. § 26.3(a)(4). Thus, with the federal government currently utilizing the same method of execution as that of Delaware, it would be, at a minimum, incongruous, to conclude that Delaware's Lethal Injection Statute violates federal law.

For these reasons, Deputy's contention that Delaware's Lethal Injection Statute is preempted by federal law and violates the Supremacy Clause of the United States Constitution is unpersuasive. Consequently, his claim for postconviction relief premised upon these arguments fails.

## B. Constitutional Challenges based upon the Eighth Amendment to the United States Constitution and Article I, Section 11 of the Delaware Constitution

Deputy contends the Delaware Lethal Injection Statute violates the Eighth Amendment of the United States Constitution and Article I, Section 11 of the Delaware Constitution. The Eighth Amendment of the United States Constitution provides a bar against "cruel and unusual punishment." U.S. Const. amend. VIII. The Delaware Constitution prohibits the infliction of "cruel punishments." Del. Const. art. I § 11. This Court has previously ruled that lethal injection is not, *per se* and "in fact," a violation of the United States and Delaware Constitutions. *State v. DeShields,* Del.Super., Cr.A. Nos. IS84–08–0075R1, *et al.,* Ridgely, P.J. (Aug. 17, 1992) Mem.Op. at 9–10, 1992 WL 245582, *aff'd sub nom., DeShields v. State,* Del.Supr., No. 403, 1992, 1993 WL 227440 (June 10, 1993) (Order) (DeShields did not appeal the constitutionality of lethal injection to the Delaware Supreme Court); *accord Hill v. Lockhart,* E.D.Ark., 791 F.Supp. 1388, 1394 (1992).

### 1. The Delaware Lethal Injection Statute's Delegation of Administrative Procedure is not Unconstitutional

■ Deputy argues the Delaware Lethal Injection Statute is unconstitutional because it fails to provide guidelines concerning the appropriate selection and training of the people administering the lethal injection. To support his argument, Deputy has produced historical references that some executions using lethal injection did not result in an instantaneous, painless death.

■ The Eighth Amendment provides that punishment, if properly performed, may not involve "unnecessary torture or a lingering death" or unneeded "terror, pain, or disgrace." *DeShields v. State,* Del.Supr., 534 A.2d 630, 640 (1987) (citing *In re Kemmler,* 136 U.S. 436, 10 S.Ct. 930, 34 L.Ed. 519 (1890); *Wilkerson v. Utah,* 99 U.S. (9 Otto) 130, 25 L.Ed. 345 (1879)), *cert. denied, DeShields v. Delaware,* 486 U.S. 1017, 108 S.Ct. 1754, 100 L.Ed.2d 217 (1988). The Eighth Amendment also prohibits punishment procedures that are "so susceptible to accidents resulting in unnecessary torture or degradation" which "constitutes a deliberate indifference to the purposeless and needless imposition of pain and suffering." *DeShields,* 534 A.2d at 640 (citing *Louisiana ex rel. Francis v. Resweber,* 329 U.S. 459, 67 S.Ct. 374, 91 L.Ed. 422 (1947)).

No requirement exists that the state statute itself must establish detailed procedures for the administration of the death penalty. The Delaware Lethal Injection Statute gives the Commissioner of the Department of Correction the authority to develop the procedure for the administration of the death sentence. *See* 11 *Del.C.* § 4209. The Policies and Procedures of the Department of Correction are conventional and well-planned. *See* (A–9–12, 16–18, 29–35.) The Delaware procedures are also reliable, as proven by past Delaware executions by lethal injection. *See* Affidavit of Henry Risley (A–20–22.) (explaining prior executions as follows: "it appeared as though the prisoner simply fell off to sleep and heaved his chest before he ceased breathing"). "It is presumed that the Department of Correction will properly perform its duties." *State v. Bailey,* Del.Super., Cr.A. Nos. IK79–05–0085R1, *et al.,* Ridgely, P.J. (Aug. 23, 1991) Mem.Op. at 31, 1991 WL 190294 (citing *Buenoano v. State,* 565 So.2d 309 (Fla.1990)), *aff'd,* Del.Supr., No. 343, 1992, Horsey, J. 1992 WL 135161 (Mar. 9, 1992). Deputy's submissions do not establish his execution will involve unnecessary tor-

ture, degradation, terror, pain or disgrace so as to render the Delaware statute unconstitutional.[6] *See DeShields, supra,* (Aug. 17, 1992) at 9–10, 1992 WL 245582; *Bailey, supra* at 31, 1991 WL 190294; *Hill,* 791 F.Supp. at 1394 (holding that the possible difficulty locating a vein suitable for lethal injection is not cruel and unusual punishment); *see also Gray v. Lucas,* 710 F.2d 1048, 1057–1061 (holding that the pain, convulsions and terror resulting from death by cyanide gas do not implicate the Eighth Amendment), *cert. denied,* 463 U.S. 1237, 104 S.Ct. 211, 77 L.Ed.2d 1453 (1983).

## 2. Death by Lethal Injection does not Violate Standards of Decency

■ Deputy contends death by lethal injection violates the Eighth Amendment because lethal injection offends evolving standards of decency. The Eighth Amendment prohibits punishment that is contrary to the "evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles,* 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958) (plurality opinion). "Eighth Amendment judgments should not be, or appear to be, merely the subjective views of individual Justices; judgment should be informed by objective factors to the maximum possible extent." *Stanford v. Kentucky,* 492 U.S. 361, 369, 109 S.Ct. 2969, 2975, 106 L.Ed.2d 306 (1989) (citing *Coker v. Geor-*

gia, 433 U.S. 584, 592, 97 S.Ct. 2861, 2866, 53 L.Ed.2d 982 (1977) (plurality opinion)).

■ Statutes passed by the states' legislators are "first" among the " 'objective indicia that reflect the public attitude toward a given sanction.' " *Stanford,* 492 U.S. at 370, 109 S.Ct. at 2975 (citing *McCleskey v. Kemp,* 481 U.S. 279, 300, 107 S.Ct. 1756, 1771, 95 L.Ed.2d 262 (1987) (quoting *Gregg v. Georgia,* 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976))). A survey shows that of the thirty-seven states allowing capital punishment, at least twenty-eight states have lethal injection as a manner of execution.[7] This national consensus is strong evidence that lethal injection does not violate American society's evolving standards of decency. *See Tison v. Arizona,* 481 U.S. 137, 154, 107 S.Ct. 1676, 1686, 95 L.Ed.2d 127 (1987) (stating "This substantial and recent legislative authorization [15 states] of the death penalty for felony murder regardless of the absence of a finding of intent to kill powerfully suggests that our society does not reject the death penalty as grossly excessive under these circumstances ..." (citation omitted)).

■ Deputy offers the ethical standards of the American Medical Association, American College of Physicians, American Nurses Association and the American Public Health Association, which proscribes participation in execution proceedings, as objective evidence

6. The majority of the defendant's submissions deal with inadequate vein access in obese defendants and defendants' violent reaction to the administered chemicals. The record is devoid of any evidence that Deputy would be subject to either of these problems.

7. The States which currently authorize lethal injection for execution are as follows: Arizona (Ariz.Rev.Stat.Ann. § 13–704 (Michie 1993)); Arkansas (Ark.Code Ann. § 5–4–616 (Michie 1993)); California (Cal.Penal Code § 3604 (West 1994)); Colorado (Colo.Rev.Stat. § 16–11–401 (1993)); Delaware (11 *Del.C.* § 4209(f)), Idaho (Idaho Code § 19–2716 (1987)); Illinois (Ill.Ann. Stat. ch. 725, para. 5/119–5(a)(1)); Louisiana (La.Rev.Stat.Ann. § 15:569(B) (West 1992)); Maryland (1994 Md.Laws 5); Massachusetts (Mass.General Laws Ann. ch. 279, § 60 (1994)); Mississippi (Miss.Code Ann. § 99–19–51 (1972 and Supp.1993)); Missouri (Mo.Rev.Stat. § 546.-720 (1993)), Montana (Mont.Code Ann. § 46–19–103 (1993)); Nevada (Nev.Rev.Stat. § 176.355(1) (1993)); New Hampshire (N.H.Rev.Stat.Ann. § 630:5 (XIII) (1993)); New Jersey (N.J.Rev.Stat.

§ 2C:49–2 (1993)); New Mexico (N.M.Stat.Ann. § 31–14–11 (1978 and Supp.1993)); North Carolina (N.C.Gen.Stat. § 15–187 (1993)); Ohio (Ohio Rev.Code Ann. § 2949.22(B)(1) (Anderson 1993)); Oklahoma (Okla.Stat.Ann. tit. 22, § 1014 (West 1993)); Oregon (Or.Rev.Stat. § 137.473 (1993)); Pennsylvania (Pa.Stat.Ann. tit. 61 § 2121.1 (1993)); South Dakota (S.D.Codified Laws Ann. § 23A–27A–32 (1994)); Texas (Texas Crim.Proc.Code Ann. § 43.14 (West 1994)); Utah (Utah Code Ann. § 77–18–5.5 (1993)); Washington (Wash.Rev.Code Ann. § 10.95.180 (1993)); and Wyoming (Wyo.Stat. § 7–13–904 (1993)). Virginia has enacted legislation, 1994 Va.Acts 921, which becomes effective on January 1, 1995, authorizing execution by lethal injection. The U.S. Government and the U.S. Military also currently authorize lethal injection for executions. *See* 28 C.F.R. § 26.3 (1993); Army Reg. 190–55, U.S. Army Correctional System: Procedures for Military Executions, para. 6–1 (27 Oct. 1986).

of standards of decency. Among other forms of objective indicia, the ethical standards of the medical profession also constitute objective evidence of standards of decency. *State v. Perry*, La.Supr., 610 So.2d 746, 769 (1992). However, the official statement which explains these organizations' position does not cite opposition to the death penalty as the basis for their position. Instead, the statement reads: "When the health care professional serves in an execution under circumstances that mimic care, the healing purposes of health services and technology become distorted." *Health Care Professional Participation in Capital Punishment: Statement from Professional Societies Regarding Disciplinary Action* (A–26.). The position adopted by these medical associations is based solely on the role of health care provider in society to comfort, heal and preserve life. *Id.* This role is naturally anathema to the taking of life by execution. The ethical obligations created by medical associations based upon the medical professionals' societal roles to comfort and heal offer little or no evidence concerning evolving standards of decency regarding the death penalty. Thus, Deputy's proffered evidence does not overcome either the statute's presumption of validity, *Gregg*, 428 U.S. at 175, 96 S.Ct. at 2926, or the weight of the national consensus, as discussed above.

Therefore, I hold that Deputy has not established that the Delaware statute violates the United States and Delaware Constitutions.

## IV. DEPUTY'S CONSTITUTIONAL CHALLENGE TO DEATH BY HANGING

Deputy contends, if death by legal injection is unconstitutional, then the other method of death to which he would be subjected—death by hanging—violates the Eighth Amendment of the United States Constitution because hanging is "cruel and unusual" punishment, and violates Article 1, Section 11 of the Delaware Constitution because hanging is "cruel." Deputy makes this argument despite acknowledging the Delaware Supreme Court and the Superior Court have held that death by hanging is constitutional.

*DeShields v. State*, Del.Supr., 534 A.2d 630, 640 (1987), *cert. denied, DeShields v. Delaware*, 486 U.S. 1017, 108 S.Ct. 1754, 100 L.Ed.2d 217 (1988); *State v. Bailey*, Del.Super., Cr.A. Nos. IK79–05–0085R1, *et al.*, Ridgely, P.J. (Aug. 23, 1991) Mem.Op. at 31, 1991 WL 190294, *aff'd* Del.Supr., No. 343, 1992, Horsey, J., 1992 WL 135161 (March 9, 1992).

■ As stated above, lethal injection does not violate either the Supremacy Clause or Eighth Amendment of the United States Constitution. Nor does it violate Article I, Section 11 of the Delaware Constitution. Therefore, because Deputy has affirmatively elected death by lethal injection—a constitutionally-permissible procedure—he does not have standing to challenge the constitutionality of hanging. When a capital defendant elects a constitutionally permissible manner of execution, he no longer has standing to challenge the constitutionality of other forms of execution. *DeShields v. Snyder*, D.Del., 829 F.Supp. 676, 693 (1987); *see Ashcroft v. Mattis*, 431 U.S. 171, 172–72, 97 S.Ct. 1739, 1740, 52 L.Ed.2d 219 (1977).

■ However, even if Deputy did have standing it is settled law in Delaware that death by hanging does not violate either the Delaware Constitution or the United States Constitution. *DeShields*, 534 A.2d at 640; *Bailey, supra,* at 31, 1991 WL 190294.

## V. DEPUTY'S MOTION FOR A STAY OF EXECUTION

■ Deputy has moved for a stay of execution, claiming that his Rule 61 motion raises issues of significance which there is a reasonable probability this Court will determine are sufficiently meritorious to warrant relief. The Court has carefully reviewed the extensive memoranda filed by counsel and the expanded record. Because the Court has been able to determine from the filings made and the record in this case that Deputy's claims are clearly without merit, further briefing and an evidentiary hearing are not necessary. Super.Ct.Crim.R. 61(h)(3). Consequently, this is not a circumstance where a stay is necessary to enable the Court to fulfill its constitutional responsibilities. *Compare*

*State v. Sullivan,* Del.Super., Cr.A. Nos. IK92–01–0192, *et al.,* Ridgely, P.J. (Jun. 14, 1994) (Order) at 6, 1994 WL 386860 (granting stay) *with State v. DeShields,* Del.Super., Cr.A. Nos. IS84–08–0075R2, *et al.,* Ridgely, P.J. (Aug. 29, 1993) Mem.Op. at 13, 1993 WL 393041 (denying stay).

## VI. CONCLUSION

For the foregoing reasons, the Court concludes that Deputy has failed to demonstrate the unconstitutionality of Delaware's Lethal Injection Statute. And, having affirmatively elected this constitutionally-permissible method of death, Deputy lacks the requisite standing to challenge the constitutionality of the alternate method of death—hanging. Therefore, all of Deputy's claims for relief fail. Deputy has made no showing of a likelihood of success on the merits of his motion for postconviction relief. Because it is in the public interest for Delaware's criminal law to be enforced without unnecessary delay, Deputy will not be granted a stay of execution by this Court. Deputy's Third Motion for Postconviction Relief, and his Motion for a Stay of Execution are **DENIED.**

An appropriate order will be entered consistent with this memorandum opinion.