**James William RILEY,**

v.

**Stanley W. TAYLOR; M. Jane Brady \*, Appellees,**

**James W. Riley, Appellant.**

**No. 94–9000.**

United States Court of Appeals, Third Circuit.

Argued March 8, 1995.

Decided July 27, 1995.

\* M. Jane Brady substituted for Charles M. Oberly, III, pursuant to Rule 43, F.R.A.P., per Clerk

Order dated 1/19/95.

Thomas J. Allingham, II (argued), Mary M. MaloneyHuss, Skadden, Arps, Slate, Meagher & Flom, Wilmington, DE, and Lawrence J. Connell, Widener University School of Law, Wilmington, DE, for appellant.

Paul R. Wallace (Argued), Steven P. Wood (Argued), Manuela DiNardo, Dept. of Justice, Wilmington, DE, for appellees.

Before BECKER, HUTCHINSON and ALITO, Circuit Judges.

## OPINION OF THE COURT

HUTCHINSON, Circuit Judge.

Appellant, James William Riley ("Riley"), a Delaware death row inmate, appeals a final order of the United States District Court for the District of Delaware denying his petition for a writ of *habeas corpus*. Delaware sentenced Riley to death after a jury found him guilty of felony murder and recommended his execution.[1] Riley also appeals several of the district court's interlocutory orders, including its denial of his motion for leave to amend his *habeas* petition. We hold that the district court's denial of Riley's motion to amend his petition was inconsistent with the exercise of sound discretion. Accordingly, we will reverse the district court's order denying Riley leave to amend his petition, vacate its order denying the original petition and remand for reconsideration of all the issues Riley seeks to raise in his proposed amended petition, including those issues the district court decided on the allegations in the unamended petition.[2]

---

1. Delaware grades felony murder as murder in the first degree. *See* 11 Del.C. § 636(a)(2). Persons found guilty of felony murder are subject to capital punishment. The fact that death occurred in the commission of a felony is one of the aggravating factors Delaware uses to narrow the class of persons who can be sentenced to death. *See Riley v. State*, 496 A.2d 997, 1021 (Del.1985), *cert. denied*, 478 U.S. 1022, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986).

2. The other interlocutory orders Riley appeals are: (1) the district court's refusal to conduct an evidentiary hearing; (2) the district court's denial of his motions to conduct discovery and expand the record; and (3) the district court's denial of his applications for funds for a psychiatrist and private investigator. Because of our disposition we do not consider the merits of these other interlocutory orders nor the merits of

any of Riley's arguments concerning them, beyond his challenge to the district court's denial of his motion to amend. These other arguments are that: (1) the State's exercise of peremptory challenges violated the Equal Protection Clause; (2) his trial counsel's performance was ineffective; (3) the jury was biased in favor of the death penalty; (4) prejudicial statements were made to the jury on the finality of a death sentence; (5) the state court's proportionality review was unconstitutional; (6) the jury instructions created a substantial risk that the death penalty would be imposed in an arbitrary and capricious manner; (7) the district court erred by denying his motion to appoint co-counsel and an investigator; and (8) the state's use of felony murder to establish both eligibility for and imposition of the death penalty was unconstitutional. Accordingly, we express no opinion on the merits of these or any

## I.

After a five and one-half day trial, a jury convicted Riley of two counts of first degree murder (felony murder and intentional murder), second degree conspiracy, possession of a deadly weapon during the commission of a felony and robbery in the first degree. The convictions arose out of a liquor store robbery by Riley and co-defendants, Tyrone Baxter ("Baxter") and Michael Williams ("Williams"). During the robbery, the liquor store owner resisted and hit Riley with a bottle of wine. Riley shot the owner twice, killing him.[3]

The State's case was largely based on Baxter's and Williams's testimony.[4] After the jury found Riley guilty, it heard evidence on whether he should be sentenced to death or life imprisonment.[5] The jury unanimously recommended death, and the state trial court sentenced Riley to be hung.[6] It also sentenced Riley to life imprisonment without parole for intentional murder, twenty years imprisonment for robbery, five years imprisonment for possession of a deadly weapon and three years imprisonment for conspiracy.

On direct appeal, the Delaware Supreme Court affirmed Riley's conviction and his death sentence. *Riley v. State,* 496 A.2d at 1027. Riley then obtained new counsel, Lawrence Connell ("Connell"), and sought post-conviction relief in the Delaware Superior Court. Riley raised multiple issues, including discriminatory use of peremptory challenges, ineffective assistance of counsel and inadequate *voir dire.* After holding three

evidentiary hearings on the ineffectiveness issue, the Superior Court denied Riley's motion for post-conviction relief. Riley moved for reargument. In considering the reargument motion, the Superior Court held that Riley had established a *prima facie* case of racial discrimination in the state's use of peremptory challenges against prospective jurors. *See Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). It held an evidentiary hearing on the *Batson* issue, but ultimately decided it against Riley, and reaffirmed its denial of Riley's motion for post-conviction relief.

The Delaware Supreme Court affirmed the Superior Court's denial of post-conviction relief. *Riley v. State,* 585 A.2d 719, 730 (Del. 1990), *cert. denied,* 501 U.S. 1223, 111 S.Ct. 2840, 115 L.Ed.2d 1008 (1991). It considered and rejected Riley's contentions that: (1) the jury instructions were inadequate at the penalty stage, *id.* at 722–25; (2) the Superior Court erred in applying *Batson, id.* at 725; (3) the *voir dire* was inadequate to identify jurors who would automatically impose the death penalty, *id.* at 725–26; and (4) trial counsel was ineffective at the penalty stage, *id.* at 726–30. After the United States Supreme Court denied Riley's petition for a writ of certiorari, the Delaware Superior Court on July 22, 1991 ordered that Riley be executed on August 15, 1991.

Three days before the scheduled execution, Riley filed a petition for *habeas corpus* in the United States District Court for the District

---

other issues raised by Riley, except to note with respect to issue number (8) that our opinion in *Deputy v. Taylor,* 19 F.3d 1485 (3d Cir.), *cert. denied, sub. nom., Stanley v. Taylor,* —— U.S. ——, 114 S.Ct. 2730, 129 L.Ed.2d 853 (1994), is binding on this panel. Under the circumstances of this case, we believe the district court should consider all these issues in light of the amended petition, so that a record can be developed in connection with its allegations.

3. For a more detailed discussion of the facts underlying Riley's convictions, *see Riley v. Snyder,* 840 F.Supp. 1012, 1017 (D.Del.1993) and *Riley v. State,* 496 A.2d at 1001–02.

4. Plea bargains resulted in a life sentence for Baxter. The charges against Williams were dropped.

5. Once a Delaware jury decides that any of the statutory aggravating circumstances are present it is free to consider any relevant circumstance in determining whether to sentence a capital defendant to life imprisonment or death. *See Whalen v. State,* 492 A.2d 552, 560 (Del.Sup.1985); *Flamer v. State,* 490 A.2d 104, 121–23 (1984), *cert. denied,* 474 U.S. 865, 106 S.Ct. 185, 88 L.Ed.2d 154 (1985).

6. Delaware has amended its law concerning capital punishment so that persons sentenced to death after June 13, 1986 are now executed by lethal injection. *See State v. Deputy,* 644 A.2d 411, 415–416 (Del.Sup.1994) (discussing 11 Del.C. § 4209). Those sentenced to death before that date can elect death by hanging or lethal injection. *Id.*

of Delaware and sought an ancillary stay of execution. The district court granted a stay.

In October 1991, after he filed a brief on the issues the petition raised and the State responded, Riley moved for substitution of counsel. He asked that Thomas J. Allingham, III, ("Allingham") and Mary M. MaloneyHuss of Skadden, Arps, Slate, Meagher & Flom enter their appearance as lead counsel with Connell to continue as co-counsel. At a hearing on the motion Connell explained that he lacked the time and resources to conduct an adequate investigation of Riley's claims. The district court granted the motion and extended the filing date for Riley's reply brief, the only outstanding submission, to January 31, 1992. The court also stated it anticipated an amended petition, advising Allingham that further extensions beyond January 31, 1992 would not be granted absent extreme circumstances.[7] In response Allingham told the court that the January 31 date was suggested "virtually in the dark" after only three days of preparation, but that he would do everything possible to meet it.

On January 10, 1992 Riley sought leave to amend his petition and stay further briefing until an amended petition could be filed. Appended to the motion was an affidavit describing the nature of the work completed, the number of hours spent to date in preparing the case (over 700 hours) and an estimate of time required to complete the investigation (an additional 750–800 hours). The motion for leave to amend did not append the text of a proposed amended petition, but instead sought a six-month extension to prepare one. On February 25, 1992 the district court denied the motion for extension, stating that "the Court concludes that Petitioner essentially seeks time to establish a new case, which ultimately defies the purpose of federal habeas review." *Riley v. Taylor*, No. 91–438–JJF, slip op. at 4 (D.Del. Feb. 25, 1992) (unpublished disposition) (citing *McCleskey v. Zant*, 499 U.S. 467, 491–95, 111 S.Ct. 1454, 1469–70, 113 L.Ed.2d 517 (1991) (successive habeas petitions subject to dismissal for abuse of the writ)).

On March 6, 1992 Riley moved for reconsideration. This time he attached the amended petition he proposed to file. The State did not oppose Riley's motion for reconsideration, but the district court denied it anyway. It also denied three other motions filed on Riley's behalf: one seeking expert psychiatric, psychological, and investigative assistance; another for an order directing the State to file copies of missing transcripts; and a third requesting leave to pursue discovery and expand the record. On December 20, 1993 the district court issued an opinion and final order denying Riley's petition for a writ of *habeas corpus*. The district court concluded, "the state court record provides a sufficient basis to decide the merits." Nevertheless it issued a certificate of probable cause and stayed Riley's execution pending disposition of this appeal.

## II.

The district court had subject matter jurisdiction over Riley's petition pursuant to 28 U.S.C.A. § 2254 (West 1994). We have appellate jurisdiction pursuant to 28 U.S.C.A. § 1291 (West 1993) and 28 U.S.C.A. § 2253 (West 1994). We review a district court's denial of a motion to amend a petition for a writ of *habeas corpus*, as we do the denial of a motion to amend any civil complaint, for abuse of discretion. *See Gillette v. Tansy*, 17 F.3d 308, 312 (11th Cir.1994); *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1413 (3d Cir.1993); 28 U.S.C.A. § 2242 (West 1994) (An application for a writ of *habeas corpus* "may be amended or supplemented as provided in the rules of procedure applicable to civil actions.").

## III.

Riley argues that the district court erred when it denied his request for leave to amend the petition. The Federal Rules of Civil Procedure apply to motions to amend petitions for a writ of *habeas corpus*. *See* 28

---

**7.** The district court said:

> I think [the State] correctly judges this, that there's going to be an amended petition, probably. I don't know whether it will be the mother of all petitions, but it will probably be real close. And then I think we'll have joined for you two to fight out the issues in the case before me and then I think the case will move rather quickly.
> App. at 1010.

U.S.C.A. § 2242 (West 1994). The rules provide in relevant part:

A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served.... Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and *leave shall be freely given when justice so requires.*

Fed.R.Civ.P. 15(a) (emphasis added).

■ In *Foman v. Davis,* 371 U.S. 178, 181–82, 83 S.Ct. 227, 229–30, 9 L.Ed.2d 222 (1962), the Supreme Court interpreted the phrase "freely-given" as a limit on a district court's discretion. It stated, " 'the Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and [that it] accept[ed] the principle that the purpose of pleading is to facilitate a proper decision on the merits.' " *Id.* at 182, 83 S.Ct. at 230 (quoting *Conley v. Gibson,* 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957)). Thus, a refusal of a motion for leave to amend must be justified. *Id.* Permissible justifications include: (1) undue delay; (2) bad faith or dilatory motive; (3) undue prejudice to the opposition; (4) repeated failures to correct deficiencies with previous amendments; and (5) futility of the amendment. *Id.; see also Lorenz v. CSX Corp.,* 1 F.3d 1406, 1414 (3d Cir.1993); *Dole v. Arco Chemical Co.,* 921 F.2d 484, 487 (3d Cir.1990); *Averbach v. Rival Mfg. Co.,* 879 F.2d 1196, 1203 (3d Cir.1989), *cert. denied,* 493 U.S. 1023, 110 S.Ct. 726, 107 L.Ed.2d 745 (1990); *Jablonski v. Pan American World Airways, Inc.,* 863 F.2d 289, 292 (3d Cir.1988); *J.E. Mamiye & Sons, Inc. v. Fidelity Bank,* 813 F.2d 610, 613 (3d Cir.1987).

■ The State argues primarily that Riley's motion for leave to amend was an abuse of the writ within the meaning of *McCleskey v. Zant,* 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991), because Riley did not show "cause and prejudice" for his failure to include new claims in his earlier petition. Brief of Appellee at 11 ("Following *McCleskey,* Riley's inability to excuse his failure to raise these claims in his first petition dooms him to failure on the 'cause' prong of the cause and prejudice test."); *see also Wise v. Fulcomer,* 958 F.2d 30, 34 (3rd Cir.1992). We disagree.

In *McCleskey,* the Supreme Court sought to curtail successive petitions for *habeas corpus.* It reasoned that a petitioner "may abuse the writ of [habeas corpus] by failing to raise a claim through inexcusable neglect." *McCleskey,* 499 U.S. at 489, 111 S.Ct. at 1467; *see also Keeney v. Tamayo–Reyes,* 504 U.S. 1, 10 n. 5, 112 S.Ct. 1715, 1720 n. 5, 118 L.Ed.2d 318 (1992). After *McCleskey,* a meritorious claim first raised in a motion to amend could be lost forever if leave to amend is denied. On the record now before us, we believe Riley's not insignificant risk of losing the opportunity to litigate the issues he raises in his proposed amended petition conflicts with the strong presumption of the Federal Rules of Civil Procedure favoring decisions on the merits. *See Fetterly v. Paskett,* 997 F.2d 1295 (9th Cir.1993), *cert. denied,* ——— U.S. ———, 115 S.Ct. 290, 130 L.Ed.2d 205 (1994) (amendments to an initial petition for *habeas corpus* should be liberally permitted in order to ensure a single comprehensive petition rather than successive petitions advancing new claims.).[8] Riley merely seeks leave to amend his initial petition. In *McCleskey* the Supreme Court was considering the practice of filing successive petitions. *See McCleskey,* 499 U.S. at 479, 111 S.Ct. at 1462. *See also Foman,* 371 U.S. at 181, 83 S.Ct. at 229.

The State also seeks to justify the district court's denial of Riley's motion for leave to file an amended petition on the ground of undue delay. It states that Riley's "request, if granted, for a six month extension ...

8. In *Fetterly,* a petitioner sentenced to death discovered previously unexhausted claims. To avoid the contention that he abused the writ, he sought a stay so that he could exhaust all his claims in state court before presenting them to the district court in a single comprehensive petition for *habeas corpus. Fetterly,* 997 F.2d at 1301–02. The court of appeals held that the district court abused its discretion when it refused to stay the federal *habeas* proceedings to permit petitioner to exhaust his newly discovered claims in the state courts and thereafter amend his petition. *Id.*

would have constituted undue delay, because nearly one year would have passed between the filing of Riley's first petition and the extended filing date." Brief of Appellee at 10. We believe the passage of this interval fails to justify the denial of a motion for leave to amend a petition for a writ of *habeas corpus*.

We believe this interval, standing alone "is an insufficient ground upon which to deny a motion to amend." *Howze v. Jones & Laughlin Steel Corp.*, 750 F.2d 1208, 1212 (3d Cir.1984) (citing *Cornell and Co. Inc. v. OSHRC*, 573 F.2d 820 (3d Cir.1978)). The six month delay Riley initially sought, though substantial, is not so extremely long that in and of itself it justifies the refusal of an extension. Riley's counsel explained that he needed additional time because of "incomplete state court records and the complexity of the case," Brief of Appellant at 16. Moreover, it quickly became apparent that a much shorter extension would have met Riley's need when counsel attached the text of a proposed amended petition to the motion for reconsideration Riley filed one week later. Thus, when the district court denied reconsideration, it was apparent that an order granting a reasonable extension beyond the initial January 31, 1992 deadline would not have resulted in undue delay. Of course, the district court's initial statement on October 18, 1991 that it would not look favorably upon requests for an extension of time beyond January 31, 1992 cannot, in and of itself, justify refusal of Riley's request for an extension that is not undue, particularly where there is no claim that the extension actually needed will be prejudicial to the state. Otherwise a court's announcement of a deadline would, *ipse dixit*, trump the policy behind Rule 15 and the principles of *Foman*.[9]

Riley filed his original motion for an extension, in a timely fashion, three weeks before the January 31, 1992 deadline. He also acted quickly once the district court denied the January 10, 1992 motion on February 25, 1992, after the court's January 31, 1992 dead-line had passed. Though Riley's counsel at oral argument conceded that he had no real expectation of getting the full six month extension he asked for, he also represented that an amended petition could have been filed by the January 31, 1992 deadline if the court had indicated, before the deadline expired, that it would not be extended.[10]

The district court's explained its initial denial of Riley's motion for leave to amend as follows:

> After a careful review of [Riley]'s application and considering the arguments of counsel, the Court concludes that [he] essentially seeks time to establish a new case, which ultimately defies the purposes of federal habeas review. The Court is persuaded that the objective of making full and comprehensive presentation of the appropriate issues for review in this case does not necessitate the filing of an amended petition, and thus, the Court will deny [Riley]'s Motion for Leave to File an Amended Petition.

*Riley v. Taylor*, No. 91–438, slip op. at 4 (D.Del. Feb. 25, 1992) (citations omitted). We disagree. Riley's amended petition not only advances new arguments in support of his initial petition for a writ of *habeas corpus*, but it also raises two entirely new claims. They appear to be fully exhausted and not the subject of procedural default. Though we cannot say Riley will prevail on any of them, we are equally unable to say the amendments he proposed are so unlikely to affect the outcome that they would be futile.

The first new claim is based on *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). In *Witherspoon*, the Supreme Court held that in capital cases the Sixth and Fourteenth Amendments prohibit exclusion of jurors who have voiced "general objections to the death penalty" or "religious scruples against its infliction" for cause. *Id.* at 522, 88 S.Ct. at 1777. Otherwise, according to the Supreme Court's reasoning, juries so selected would be predisposed to impose the death penalty once they had found the

---

9. The parties do not contend that bad faith or repeated failure to correct deficiencies are present here.

10. This representation is supported by the attachment of the proposed amended petition to Riley's March 6, 1992 motion for reconsideration.

defendant guilty of a capital crime. The present record arguably shows that the state court that tried Riley's capital case arguably excluded two potential jurors for cause because of their antipathy to the death penalty, rather than a refusal to vote for capital punishment if death was justified by the law and the evidence.[11]

Riley's other new claim is based on *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1197, 10 L.Ed.2d 215 (1963) (criminal defendant has constitutional right to receive any evidence in the prosecution's possession which would tend to exculpate him). In *Brady*, the Supreme Court concluded that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." *Id.* This evidence consists of transcripts of telephone conversations between Baxter and Baxter's mother. Riley alleges that Baxter spoke with her on numerous occasions between the time of arrest and trial. He sought a transcript of the tape recordings of these calls for possible impeachment of Baxter, a key witness for the prosecution. *See United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985) (impeachment evidence within the *Brady* rule). The trial court, without performing an *in camera* review, denied Riley's request for these transcripts.[12]

An "[a]mendment of the complaint is futile if the amendment will not cure the deficiency in the original complaint or if the amended complaint cannot withstand a renewed motion to dismiss." *Jablonski v. Pan American World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir.1988) (citing *Massarsky v. General Motors Corp.*, 706 F.2d 111, 125 (3d Cir.), *cert. denied*, 464 U.S. 937, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983)). We cannot say that is the case with Riley's proposed amendments.

To summarize, Riley's proposed amended petition advances new claims that may have arguable merit, alleges additional support for the claims he made in the original petition, was not the subject of undue delay and, on this record, it does not appear that the short delay actually needed to prepare the amended petition would have prejudiced the state. Accordingly, we hold that the district court's order denying Riley leave to amend his petition for a writ of *habeas corpus* is inconsistent with the exercise of sound discretion in light of Rule 15(a)'s command that amendments should be freely allowed when justice so requires.

## IV.

The district court's order denying Riley's motion for leave to amend his petition for a writ of *habeas corpus* will be reversed and the case remanded to the district court to allow Riley to file an amended petition in the form attached to his March 6, 1992 motion for reconsideration and thereafter for further proceedings consistent with this opinion.

---

11. While we do not resolve this issue, we note that it was twice raised in the Delaware Supreme Court and rejected. *See Riley v. State*, 585 A.2d at 725–26; *Riley v. State*, 496 A.2d at 1002–06.

12. No court has yet reviewed these tapes, *in camera* or otherwise. Riley's *Brady* claim was, however, rejected by the Delaware Supreme Court. *See Riley v. State, supra*, 496 A.2d at 1019.