**STATE of Delaware**

v.

**David F. DAWSON, Defendant,
ID No. 88K00413DI.**

**IK86–12–0024R1, IK87–01–0834R1
to IK87–01–0847R1.**

Superior Court of Delaware,
Kent County.

Submitted: April 11, 1995.
Decided: June 9, 1995.

410

Richard E. Fairbanks, Jr., Ferris W. Wharton, and Loren C. Meyers, Deputy Attorneys General, Department of Justice, Wilmington, for State of Delaware.

Kevin J. O'Connell, Wilmington, and Sheryl Rush–Milstead, Wilmington, for defendant.

## MEMORANDUM OPINION

RIDGELY, President Judge.

Defendant David F. Dawson (Dawson) was convicted in 1988 by a Kent County jury of four counts of Murder in the First Degree, 11 *Del.C.* § 636; one count of Burglary in the Second Degree, 11 *Del.C.* § 825; one count of Robbery in the First Degree, 11 *Del.C.* § 832; six counts of Possession of a Deadly Weapon During the Commission of a Felony, 11 *Del.C.* § 1447; and one count of Posses-

sion of a Deadly Weapon by a Person Prohibited, 11 *Del.C.* § 1448, all stemming from the robbery and murder of Madeline Kisner after his escape from imprisonment at the Delaware Correctional Center.[1] Following a penalty hearing the jury unanimously recommended a sentence of death pursuant to 11 *Del.C.* § 4209 for each count of first degree murder. This Court sentenced Dawson to death on each of the four counts of Murder in the First Degree and a term of 100 years incarceration on the remaining counts.

On direct appeal, the Delaware Supreme Court affirmed the convictions and sentences. *Dawson v. State,* Del.Supr., 581 A.2d 1078 (1990) (*Dawson I* ). Dawson's death sentences (not his convictions) were vacated and remanded for further proceedings by the United States Supreme Court. *Dawson v. Delaware,* 503 U.S. 159, 112 S.Ct. 1093, 117 L.Ed.2d 309 (1992). On remand, the Delaware Supreme Court reversed the death sentences and ordered a new penalty hearing. *Dawson v. State,* Del.Supr., 608 A.2d 1201 (1992). This Court granted Dawson's motion for a change of venue to New Castle County for that hearing. In 1993 the New Castle County jury also unanimously recommended sentences of death on each of the first degree murder convictions. This Court subsequently sentenced Dawson to death for each count of Murder in the First Degree. *State v. Dawson,* Del.Super., IK86–12–024, Ridgely, P.J. (April 2, 1993). On appeal, the Delaware Supreme Court affirmed the sentences of death. *Dawson v. State,* Del.Supr., 637 A.2d 57 (1994) (*Dawson II* ). After the remand of this case, Dawson filed a *pro se* Motion for Postconviction Relief pursuant to Superior Court Criminal Rule 61 alleging among other things, that his counsel were ineffective in representing him in violation of his rights under the Sixth Amendment. This Court appointed new counsel for Dawson and stayed his scheduled execution in order that this motion could be considered. Venue was returned to Kent County by my Order. The Court ordered Dawson's former trial and appellate counsel to file affidavits in response to the allegations of ineffective assistance of

---

1. On June 6, 1988 Dawson pled guilty to second degree burglary and theft stemming from a relat-

ed burglary of the Seeney residence on the same day as the murder of Mrs. Kisner.

counsel raised. An evidentiary hearing on the factual issues to be resolved was conducted and briefing was completed on April 10, 1995.

After careful consideration of the evidence presented, the expanded record, and the arguments of counsel, I conclude that Dawson's motion is devoid of merit and that he is not entitled to any form of postconviction relief from his convictions or the sentences of death which have been imposed.

## I. FACTS

A comprehensive statement of facts is contained within the 1990 opinion of the Delaware Supreme Court. *Dawson I*, 581 A.2d at 1082–85. A summary of those facts as well as any additional facts necessary to decide the present motion follow.

On the morning of December 1, 1986 between 1:15 a.m. and 2:20 a.m., Dawson escaped from the Delaware Correctional Center near Smyrna, Delaware with three other inmates, Larry Nave, Richard Irwin and Mark McCoy. That same morning before 5:00 a.m., a 1965 Ford Mustang was stolen from a location on the north side of Smyrna. This automobile was discovered later that morning at 6:15 a.m., on the shoulder of northbound U.S. Route 13, approximately one-half mile south of Fieldsboro, Delaware. Fieldsboro is between eight and eight-and-a-half miles north of Smyrna. Subsequent forensic investigation identified a latent fingerprint on the passenger door window to be that of McCoy and an address book belonging to Nave was uncovered in the back seat.

Wilbert Dill ("Dill") testified that he operated the Fieldsboro service station, located at the intersection of Route 13 and Noxontown Road. When Dill arrived at work around 5:45 a.m. on December 1, 1986, he saw three men, dressed in similar blue clothing, standing by the station's bathroom. Dill noticed the three men attempt to enter vehicles parked at the other businesses located at the intersection. Dill observed only these three men for nearly an hour, until approximately 6:40 a.m.

Cathy Spence ("Spence"), Nave's sister, identified the three men seen by Dill as Irwin, McCoy and Nave. Spence initially told the police that Nave had called her seeking assistance, but that she had refused. At trial, however, Spence testified that she went to the Fieldsboro service station and gave the men a change of clothing. Spence further testified that she remained with Nave, McCoy and Irwin until approximately 6:30 p.m. to 7:50 p.m. that day. Finally, she testified that at no point in time during that day did she see Dawson.

Around the same time that McCoy, Nave and Irwin were at the Fieldsboro service station a 1970 Oldsmobile Starfire automobile was stolen from the south side of Smyrna. The car was taken at some point between 10:00 p.m., November 30 and 7:15 a.m. on December 1st. The car was first noticed in the early morning hours of December 1st and was found by the police the next day on County Road 139, east of Kenton.

The location of the abandoned Oldsmobile Starfire was approximately two miles southwest of the home of Frank and Dorothy Seeney ("Seeneys"). Mr. Seeney left his home at approximately 5:30 a.m. on December 1st and his wife followed at about 6:30. At 3:30 p.m. Mrs. Seeney discovered their home had been burglarized in their absence. The stolen items were a man's size forty-eight motorcycle jacket, several pocket watches, and some containers of loose change. No other men's clothing was missing. Dawson pled guilty to the Seeney burglary and theft.

Approximately one-half mile from the Seeney home was the residence of Richard and Madeline Kisner, the victim, and their son Brian. Mr. Kisner told the jury that he and his sixteen year old son left their home on December 1st at approximately 7:30 a.m. The couple's truck and 1986 Chrysler LeBaron were in the driveway when they left. Mrs. Kisner was home in the shower when her husband and son departed. Although she routinely arrived at her job everyday by 8:30 a.m., on December 1st she failed to appear at work. Her co-worker phoned the Kisner home several times during the day without any response.

Brian arrived home from school around 3:30 p.m. and noticed his mother in her red housecoat lying on her bed. Thinking she was ill, Brian did not disturb her. Shortly after he arrived home one of his mother's co-workers phoned the house and told Brian his mother had not come to work. Brian went to his mother's room, saw blood around her head and yelled to her. He received no response. He grabbed a knife for protection, called the police, and went outside to wait in the truck.

When the police arrived they observed Mrs. Kisner and a large amount of blood on the bed. The base of a trophy was nearby. She had been gagged with a sock placed over her mouth and knotted at the back of her head. A nylon stocking was around her neck. Her hands were bound with shoe-strings. Her obvious injuries included a lac-eration to the forehead and multiple stab wounds in the chest. An autopsy conducted by the Medical Examiner determined that there were twelve stab wounds to the neck and chest. The cause of Mrs. Kisner's death was cardiac tamponade, a hemorrhage within the pericardial sac which prevents the heart from pumping, and hemorrhage due to the stab wounds.

When Mr. Kisner arrived home he told the police that his wife's 1986 Chrysler LeBaron and her car keys were missing. Also missing was some money. Mr. Kisner explained that his wife routinely carried several two dollar bills in her wallet. No men's clothing was missing.

Mrs. Kisner's car was found in Milford, Delaware on the evening of December 1st, about a half block from a tavern named the Zoo Bar. Inside the car the police located a carton of cigarettes and a corn chip bag, each of which bore Dawson's fingerprints. Patty Davis testified that she and her roommate Geraldine Ryan encountered Dawson at the Zoo Bar that evening. He was wearing a black leather jacket that was too large for him. That same evening the Milford Police spotted a man fitting Dawson's description leaving the Zoo Bar, but were unable to find him. Later that evening, the State Police found a Ford LTD which had been in a one-car accident in Lincoln. The car had been stolen near where the Kisner vehicle was found. In the Ford the police found a leath-er hat, similar to that worn by the man the Milford Police had seen leaving the Zoo Bar. Approximately ½ to ½ mile from the accident the police found Dawson hiding on the floor of another car.

When he was apprehended, Dawson was wearing the black leather jacket stolen from the Seeneys'. In the jacket, police found four pocket watches belonging to Mr. Seeney and a two dollar bill. A fifth watch was turned over to the police by Geraldine Ryan, one of Dawson's companions at the Zoo Bar. Dawson also had in his possession a cotton sock which matched in all microscopic and optical properties, as well as in color, compo-sition, and construction, the sock used to gag Mrs. Kisner. Two Excedrin bottles filled with coins and a small knife were also seized.

F.B.I. tests of the black jacket and Daw-son's T-shirt showed red triacetate fibers on the clothing which matched the red triacetate fibers found on Mrs. Kisner's robe. Blood found on Dawson's undershirt and sweatshirt contained enzyme markers which were con-sistent with Mrs. Kisner's blood and the blood found on the bedspread, but not consis-tent with Dawson's own blood.

## II. THE ALLEGED GROUNDS FOR POSTCONVICTION RELIEF

The grounds presented by Dawson for postconviction relief are as follows.

In argument one, Dawson argues that his rights under the United States and Delaware Constitutions were violated when the State failed to preserve knives seized from the other escapees in Arizona.

In argument two, Dawson argues his con-stitutional rights were further violated when the State failed to produce immediately a witness's statement which Dawson alleges is *Brady* material.

In argument three, Dawson claims his con-stitutional rights were violated during jury selection when potential jurors were exclud-ed for cause based on their opinions of the death penalty.

In argument four, Dawson argues that he was denied a fair trial and due process by remarks made by the prosecution in closing arguments.

In argument five, Dawson contends his trial counsel provided ineffective assistance of counsel.

In argument six, Dawson asserts that the Delaware Death Penalty Statute violates the Eighth and Fourteenth Amendments to the United States Constitution.

In argument seven, Dawson argues that his death sentences for felony murder are unconstitutional because the felony murder statute does not adequately narrow the group of death-eligible defendants.

In argument eight, Dawson contends that he did not receive a fair penalty hearing because prospective jurors were excluded because of their beliefs on the death penalty.

In argument nine, Dawson asserts that his constitutional rights were violated by the prosecution's closing argument during the penalty phase.

Finally, Dawson raises several additional grounds for relief in his amended motion for postconviction relief and original *pro se* motion that he did not brief in detail. Dawson states in his brief that he has not waived these arguments, which are:

a. That he was denied a fair trial because the trial court denied his request for a change of venue. (paragraph 45 of Dawson's Amended Motion for Postconviction Relief ("motion"));

b. That Dawson was denied a fair trial when the court denied his request for a continuance (paragraph 47 of Dawson's motion);

c. That Dawson was denied a fair trial when the jury was selected and the trial conducted in a manner that periodically exposed the jury to inflammatory publicity (paragraph 48a of the motion);

d. That Dawson was not adequately protected against inflammatory publicity because the court failed to conduct adequate voir dire (paragraph 48b of the motion);

e. That Dawson's rights to a fair trial and due process were violated when the jury was not sequestered (paragraph 49 of the motion);

f. That Dawson's constitutional rights were violated when the jury found that one of the several statutory aggravating circumstances existed by a vote of 8 to 4. Thus Dawson argues he was sentenced to death in part based on a non-unanimous jury recommendation (paragraph 55 of the motion);

g. That Dawson's counsel provided ineffective assistance during his penalty phase (paragraph 57 a-c of the motion and grounds 5 and 6 of Dawson's original *pro se* motion).

The following grounds for relief are given in Dawson's initial *pro se* motion for postconviction relief ("*pro se* motion"), but not again raised in the amended motion or briefed.

h. Trial counsel was ineffective for failing to introduce a potentially exculpatory ring seized from him at the time of his arrest and for failing to subpoena potentially exculpatory witnesses (ground 2 of *pro se* motion).

i. Appellate counsel was ineffective for failing to raise issue of alleged perjury of State's witnesses (ground 3 of *pro se* motion).

## III. DISCUSSION

### A. The "Deberry" Issue

Dawson claims in his first argument that his rights under the sixth and fourteen amendments to the United States Constitution and pursuant to Article I, Section 7 of the Delaware Constitution were violated when the State failed to preserve evidence that could have been favorable to him. This issue was not raised at trial or on direct appeal. Therefore, it is procedurally barred under Superior Court Criminal Rule 61(i)(3), unless Dawson can establish (1) cause for his failure to have raised it earlier and (2) actual prejudice. *Younger v. State*, Del.Supr., 580 A.2d 552 (1990). *Evans v. State*, Del.Supr., No. 266, 1986, Horsey, J., 1987 WL 36985 (Apr. 6, 1987) (Order). In his opening brief and in his amended motion for postconviction

relief Dawson makes no attempt to establish cause for failing to have raised the issue at trial or on direct appeal. However, in his reply brief Dawson argues that his claim is not procedurally barred because the alleged constitutional violation undermines "the fundamental legality, reliability, integrity [and] fairness of the proceeding leading to [his] judgment of conviction." (Reply brief at 1 citing to Super.Ct.Crim.R. 61(i)(5)). Dawson also contends that his trial and appellate counsel were ineffective for failing to raise the issue.

Dawson's claim of ineffective assistance of counsel can rise to cause for his failure to have raised the issue earlier if he satisfies the test set out by the United States Supreme Court for determining whether counsel's representation was constitutionally ineffective. *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2063–64, 80 L.Ed.2d 674 (1984) (citing *McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763 (1970)); *see also Riley v. State,* Del.Supr., 585 A.2d 719, 726 (1990); *Flamer v. State,* Del.Supr., 585 A.2d 736, 753 (1990). First, Dawson must show that his counsel's representation fell below an "objective standard of reasonableness." *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. A strong presumption exists that the counsel's representation was professionally reasonable. *Flamer v. State,* 585 A.2d at 753. This standard is highly demanding. *Id.* at 754. *Strickland* mandates that when viewing the counsel's representation, this court must endeavor to eliminate the "distorting effects of hindsight." *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065.

Second, a defendant must prove actual prejudice. *See Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. Prejudice is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.; Darden v. Wainwright,* 477 U.S. 168, 194, 106 S.Ct. 2464, 2478, 91 L.Ed.2d 144 (1986); *Kimmelman v. Morrison,* 477 U.S. 365, 375, 106 S.Ct. 2574, 2582–83, 91 L.Ed.2d 305 (1986); *Burger v. Kemp,* 483 U.S. 776, 788–89, 107 S.Ct. 3114, 3122–32, 97 L.Ed.2d 638 (1987); *accord, e.g. Skinner v. State,* Del.

Supr., 607 A.2d 1170, 1172 (1992); *Flamer,* 585 A.2d at 753–54; *Riley,* 585 A.2d at 726–27. In addition, the Delaware Supreme Court has consistently held that in setting forth a claim of ineffective assistance of counsel, a defendant must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *E.g., Skinner v. State,* Del.Supr., No. 318, 1993, Holland, J., 1994 WL 91138 (March 31, 1994) (Order); *Brawley v. State,* Del.Supr., No. 372, 1992, Moore, J., 1992 WL 353838 (October 7, 1992) (Order); *Younger,* 580 A.2d at 556; *accord, Wells v. Petsock,* 941 F.2d 253, 259–60 (3d Cir.1991); *Dooley v. Petsock,* 816 F.2d 885, 891–92 (3d Cir.1987). That principle follows from the terms of Rule 61(b)(2): "[t]he motion … shall set forth in summary form the facts supporting each of the grounds [for relief]." *See DeShields v. Snyder,* 830 F.Supp. 819, 823–24 (D.Del.1993) (citations omitted).

By way of background, Dawson's fellow escapees, Larry Nave, Richard Irwin, and Mark McCoy, were arrested in Arizona after they had robbed a convenience store in St. George, Utah. The property seized from them at the time of their arrest was eventually delivered to the Delaware State Police in April 1987. Among the items seized were several firearms and eight knives. After the trial of the three for kidnapping, the knives were designated in September 1987 for disposal at auction in the spring of 1988, because they were no longer considered of value. *See generally Gibbs v. State,* Del.Supr., 479 A.2d 266, 270 (1984). In May 1988 the Public Defender's office asked to inspect the knives, but the knives had already been sold.

Detective Kenneth Castelline went to Arizona after McCoy, Nave, and Irwin had been captured. Castelline's interview of McCoy and Nave revealed nothing inconsistent with the State's theory that Dawson had separated from the others soon after the escape and had alone burglarized the Seeney residence and later murdered Mrs. Kisner. Castelline was aware through conversations with the officer in charge of the Kisner murder investigation that Dawson's version of events implicating the other three men was not credible because of the time frames involved. Because all of the property taken

during the Seeney and Kisner burglary was recovered, there was simply no indication that the knives seized in Arizona were in anyway connected to the Kisner homicide. Additionally, trial counsel was told by Dawson that he had separated from the other three at around 2:00 a.m. on December 1st. Given this admission along with the chronology of events, trial counsel reasonably assumed that the knives had no relevance to Dawson's trial. I find that trial counsel's decision not to have asked to view the knives when they were available was within the wide range of reasonable professional assistance. The Court is not persuaded that defense counsel's representation was deficient under *Strickland.*

■ Dawson argues that the failure to preserve the knives prejudiced him and deprived him of a fair trial. The Court will analyze the prejudice issue under *Deberry* and *Strickland* standards since the two issues are interwoven in this case. As Dawson notes, where a defendant alleges prejudice because the State failed to gather evidence, the following factors should be considered:

1. The degree of negligence or bad faith involved;

2. The importance of the missing evidence considering the probable value and the reliability of secondary or substitute evidence that remains available, and;

3. The sufficiency of the other evidence produced at the trial to sustain the conviction.

*Deberry v. State,* Del.Supr., 457 A.2d 744, 752 (1983). After careful consideration of the expanded record, the Court is satisfied that Dawson has not shown any prejudice stemming from the destruction of the knives seized from Irwin, McCoy and Nave or from trial and appellate counsels' failure to pursue this claim.

Initially, Dawson contends the destruction of the knives by the police was grossly negligent. Under the facts of the case however, the Court is not convinced that this is so. In the first place, the only evidence suggesting that the knives were relevant is Dawson's own version of the events which is flatly contradicted by the evidence. According to Dawson, the four men went to Smyrna after leaving the prison grounds. There, they stole a car and drove north, abandoning the car near Fieldsboro. After unsuccessfully looking for another car to steal and after Nave was unable to persuade his sister to retrieve them, the quartet returned to Smyrna by foot. In Smyrna, he contends, they stole another car, but with Dawson driving, the car was wrecked near Kenton. Dawson states he then alone burglarized the Seeney residence, and entered the Kisner household first. Dawson admitted tying Mrs. Kisner up, but claimed he left to get gas in the car, leaving the other three at the house. When Dawson returned after getting gas, he claimed that the other three were gone and Mrs. Kisner was dead. According to Dawson, it took the four two hours to reach the Kisner home after leaving Fieldsboro.

The evidence contradicts Dawson's story in a number of significant ways. First, according to him, on the ride from Smyrna to Fieldsboro, Nave was in the right front seat, McCoy was driving, Dawson was in the right back seat, and Irwin was in the left back seat. The physical evidence suggests that Nave was in the back, his address book having been found by police there, and that McCoy was in the front passenger seat, as evidenced by his fingerprint on the right front side window.

More significant is the discrepancy in the chronology of Dawson's account of events and the remainder of the evidence. Dawson's timetable is totally inconsistent with the evidence.[2] Wilbert Dill saw only three men in the Fieldsboro area from the time he arrived at work until approximately 6:40 a.m. Phone records show a call was placed from the pay phone outside of Dill's service station to Nave's sister Kathy Spence at 6:36 a.m. Therefore, if the four had left Fieldsboro at 6:40 a.m. the soonest they would have reached the Kisner home, according to Daw-

---

**2.** Dawson's trial counsel reached the same conclusion. Additionally, Dawson admitted to his counsel that his initial statement that the four were together was not true and that he separated from the other three shortly after their escape.

son's chronology, would have been 8:40 a.m. Additionally, the Seeney burglary had to have been committed prior to the Kisner murder, pushing the time frame further back, as evidenced by the red triacetate fibers from Mrs. Kisner's robe found on the leather jacket taken from the Seeney residence. By this time however, Mrs. Kisner would have been en route to or at work. Dawson's version also fails to account for the fact that when he allegedly returned with Mrs. Kisner's Chrysler LeBaron, the other vehicle was still in the driveway,[3] yet the other three had left. It would be reasonable to assume that the three, who had already stolen several vehicles, would certainly have taken the truck as another getaway vehicle instead of fleeing on foot. It should also be noted that no clothing which could disguise blue prison uniforms was taken from the Kisner household. Additionally, a car abandoned east of Kenton, as described by Dawson, was seen by residents as early as 6:00 a.m. and no later than 6:30 a.m. Given these facts, the car described by Dawson and abandoned could not have contained Irwin, McCoy and Nave who were, at that time, in Fieldsboro. Finally, all the property taken from the Seeney and Kisner burglaries was recovered. Under all of these circumstances, it was not unreasonable for the knives seized by the police in Arizona to have been disposed. The Court finds no evidence of negligence or bad faith involved in the disposition of the knives. The knives were simply not material or probative of Dawson's guilt or innocence.

Turning to the second prong of the prejudice test under *Deberry* (whether there was other evidence that remained available), the jury was told that the other three had been seized with knives in their possession. The defense argued that, given the shortcoming in the testimony of Dill and Spence, the inability of the State to produce a murder weapon, the "mobility" of the three men and the failure of the prosecution to test any of the weapons, the prosecution had failed to establish Dawson's guilt. The jury was made aware that the weapons seized could not be excluded as the murder weapon. Had the

weapons been presented in evidence they would have added little to what was already known, since the medical examiner testified that she would have not been able to reach a conclusion whether a particular knife caused the wounds to Mrs. Kisner. This being the case, the knives themselves would not have been any more probative than the evidence already presented.

Finally, in relation to all of the evidence in the case, the knives had minimal significance because there was more than sufficient evidence to have convicted Dawson. *Johnson v. State*, Del.Supr., 460 A.2d 539, 541 (1983). Dawson's fingerprints were found on items recovered from the Kisner vehicle and he had a two dollar bill similar to those carried by Mrs. Kisner in his possession when he was arrested. A sock visually and microscopically similar to that used to gag Mrs. Kisner was in Dawson's pocket. Fibers from Mrs. Kisner's robe were on Dawson's T-shirt and the black jacket stolen from the Seeneys'. Blood consistent with Mrs. Kisner's, but not Dawson's, was found on his undershirt and sweatshirt.

■ The testimony of two witnesses placed the other three men and not Dawson at Fieldsboro where a call was made to Nave's sister at 6:36 a.m. There being no "clear link" between Mrs. Kisner's death and the other escapees, evidence of the knives would have been inadmissible. *Void v. United States*, D.C.App., 631 A.2d 374, 386 n. 27 (1993). *See State v. Higgins*, 201 Conn. 462, 518 A.2d 631, 634–35 (1986); *State v. Prunier*, 28 Conn.App. 612, 613 A.2d 311, 315 (1992); *State v. Robinson*, Me.Supr., 628 A.2d 664, 666–67 (1993); *Commonwealth v. Steele*, 522 Pa. 61, 559 A.2d 904, 911 (1989). *See generally Whitfield v. State*, Del.Supr., 524 A.2d 13, 15–17 (1987). Having carefully considered the facts of this case, the Court is convinced beyond any reasonable doubt that any error which may have existed in the handling of the knives seized by the police in Arizona did not impair the reliability of the verdict. As a result, Dawson has not established prejudice under the merits of his argument, *Deberry* or Rule 61(i)(3). *Evans, su-*

---

**3.** Brian Kisner testified he went into the truck after discovering the body.

*pra*, at 3–4. Dawson's argument is without merit.

## B. The "Brady" Issue

Dawson next asserts that his rights to due process and a fair trial were violated when the State failed to immediately inform the defense that a witness had given a contradictory statement. Dawson argues that the second statement made by Cathy Spence to the police during trial was *Brady*[4] material to which he was entitled to receive immediately. Spence originally told the police that she received two phone calls from her brother, Larry Nave, on the morning of December 1, 1986. According to Spence, Nave asked her to come pick them up. Spence told the police on tape that she had refused to help them. During Dawson's trial, Spence contacted the State and admitted that she had driven to Fieldsboro in response to her brother's calls for help.

At trial Spence testified in accordance with her second statement, that she had gone to the service station in Fieldsboro and picked up Nave, Irwin and McCoy. Further, she testified she never saw Dawson. Dawson's counsel was given Spence's second statement prior to her testifying pursuant to *Jencks v. United States*, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957); *see also McBride v. State*, Del.Supr., 477 A.2d 174, 181 (1984). The defense did not seek a delay in the trial to investigate Spence's changed story. The cross-examination by defense counsel was thorough and probed Spence's motivations for testifying in contradiction to her initial statement. The defense also played Spence's original statement for the jury.

Dawson's argument that Spence's statement, made during the trial, should have been turned over immediately as *Brady* material is procedurally barred under Rule 61(i)(3) unless he can demonstrate cause and prejudice. Dawson, in his reply, briefly argues that the failure of appellate counsel to consider raising the issue on appeal constitutes ineffective assistance of counsel and establishes cause. Dawson does not assert that trial counsel's failure to have raised the issue or to have sought a continuance once

Spence's statement was produced was ineffective. Dawson contends only that the failure by appellate counsel to even consider the issue "falls below the objective standard of reasonableness." After reviewing the record the Court disagrees. The Court does not find any violation of the *Brady* rule. Therefore, failure to have raised the issue can not be said to have been ineffective assistance of counsel.

■ Under *Brady v. Maryland, supra*, the prosecution has a duty to disclose exculpatory evidence to the defense. In this case Spence's statement was disclosed to the defense during trial. Dawson argues that he should have been given the statement immediately so that he could have had an opportunity to prepare better for cross-examination of Spence. Trial counsel could have, but did not seek additional time to research the issue. This decision was not unreasonable trial strategy. Furthermore, given that the defense was able to effectively cross-examine Spence, Dawson has suffered no prejudice. The Delaware Supreme Court has held that:

> Prior statements of a witness sought for the purpose of impeachment do not ripen into discoverable evidence under Rule 17(c) until the witness has testified at trial and his credibility has been put in issue. *United States v. Cuthbertson*, 3rd Cir., 630 F.2d 139 (1980), *cert. denied*, 449 U.S. 1126, 101 S.Ct. 945, 67 L.Ed.2d 113 (1981).

*McBride v. State*, Del.Supr., 477 A.2d 174, 181 (1984). Dawson received Spence's statement when he was entitled to it.

■ Dawson contends that Spence's statement was impeachment material and thus *Brady* material under *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). In *Bagley*, the Supreme Court ruled that when the State withheld evidence that government witnesses were compensated, this evidence was *Brady* material and should have been disclosed so that the defense could impeach the witnesses. *Bagley* at 676–77, 105 S.Ct. at 3380–81; The situation presented in *Bagley* is simply not present in Dawson's case. First and most

4. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)

importantly, Spence's statement was not concealed from Dawson and he had full access to it prior to her testimony. Next, and equally damaging to Dawson's contention, is the fact that Spence's statement was consistent with her trial testimony and thus not true impeachment evidence. Finally, Spence's statement can not be said to be favorable to Dawson. In fact, as Dawson acknowledged, it was detrimental to him. For these reasons the Court finds no *Brady* violation in the State's disclosure of Spence's second statement prior to her testimony and, therefore, there was no ineffective assistance of counsel for failure to have raised the issue on appeal.

■ In any event, Dawson cannot establish actual prejudice. The focus of the inquiry is not on the effect that disclosure during trial had on defense preparation, "but instead on whether earlier disclosure could have created a reasonable doubt of guilt that did not otherwise exist." *United States v. Rogers,* 960 F.2d 1501, 1511 (10th Cir.1992) (quoting *United States v. George,* 778 F.2d 556, 562 (10th Cir.1985)). Dawson asserts that he could have developed evidence which would have damaged Spence's testimony if given her statement several days earlier. Dawson merely speculates that such evidence exists and has identified nothing that would place Spence's testimony in doubt. As a result, the few days the disclosure was delayed did not prejudice Dawson. *Moore v. State,* Del. Supr., No. 63, 1994, Veasey, C.J. (Feb. 17, 1995) (Order) at 6–8, 1995 WL 67104; *Lilly v. State,* Del.Supr., 649 A.2d 1055, 1057–59 (1994). Dawson's claim is barred by Rule 61(i)(3).

## C. The Selection of the Jury

■ Dawson contends that his rights to a fair trial and penalty hearing were violated when members of the jury array were excused for cause based on their views on the death penalty. Dawson asserts that this selection process made the jury abnormally prone to finding him guilty and to imposing the death penalty. In the jury selection for the 1988 trial, four prospective jurors were challenged for cause by the prosecution on the basis that their views against the death penalty would prevent or substantially impair their performance of their duties in accordance with the Court's instructions and their oaths. *See generally DeShields v. State,* Del. Supr., 534 A.2d 630, 634 (1987). Dawson did not raise a claim based on this exclusion of jurors in *Dawson I.* As a result, review of this claim is barred by Rule 61(i)(3) unless Dawson demonstrates cause and prejudice. *E.g., Younger v. State,* Del.Supr., 580 A.2d 552, 555–56 (1990). In his reply brief, Dawson simply states that "the record clearly demonstrates both cause and prejudice," yet he fails to explain where and what such cause and prejudice are. Thus this claim is barred by Rule 61(i)(3).

■ In any event, Dawson cannot establish prejudice: neither the Federal nor State Constitution prohibits the prosecution from challenging for cause any prospective juror whose views against the death penalty would prevent or substantially impair his or her performance in accordance with the Court's instructions and the oath as a juror, even if the resulting jury is more "conviction-prone." *Buchanan v. Kentucky,* 483 U.S. 402, 419–20 & n. 18, 107 S.Ct. 2906, 2915–16 & n. 18, 97 L.Ed.2d 336 (1987); *Lockhart v. McCree,* 476 U.S. 162, 179–84, 106 S.Ct. 1758, 1768–71, 90 L.Ed.2d 137 (1986); *Lovett v. State,* Del. Supr., 516 A.2d 455, 475–76 (1986); *Blount v. State,* Del.Supr., 511 A.2d 1030, 1035–39 (1986).

During the jury selection for the 1993 penalty hearing, the prosecution also challenged four prospective jurors for cause on the basis that their views against the death penalty would impair their performance as jurors in accordance with the Court's instructions and their oaths. *See generally DeShields,* 534 A.2d at 634. Dawson failed to raise his claim that the jury was "unduly prone to find the necessary predicates to a death sentence" on appeal in *Dawson II.* This claim is, therefore, barred under Rule 61(i)(3) unless he can establish cause and prejudice. *Younger,* 580 A.2d at 555–556. Dawson has not established cause for his failure to have raised this issue earlier. Additionally, Dawson cannot establish actual prejudice because neither the Federal nor State Constitution prohibits challenges for cause of prospective jurors whose views against the death penalty would

prevent or substantially impair his or her duties as a juror. *Buchanan,* 483 U.S. at 419–20 & n. 18, 107 S.Ct. at 2915–16 & n. 18; *McCree,* 476 U.S. at 179–84, 106 S.Ct. at 1768–71; *Lovett,* 516 A.2d at 475–76; *Blount,* 511 A.2d at 1035–39; *see Wainwright v. Witt,* 469 U.S. 412, 423, 105 S.Ct. 844, 851–52, 83 L.Ed.2d 841 (1985). This claim is barred under Rule 61(i)(3).

■ Dawson's assertion that the exclusion of jurors for cause violated his right to a jury representing a fair cross-section of the community is also barred, as it was raised in *Dawson II* and rejected by the Delaware Supreme Court. *Dawson II,* 637 A.2d at 61 (citing cases); Super.Ct.Crim.R. 61(i)(4). Dawson has merely restated the issue. However, his ability to articulate the claim differently does not require this Court to revisit the question. *Riley v. State,* Del. Supr., 585 A.2d 719, 721 (1990). *See Younger,* 580 A.2d at 556. Furthermore, Dawson has not shown that "subsequent legal developments have revealed that the trial court lacked authority to convict or punish him." *Flamer v. State,* Del.Supr., 585 A.2d 736, 746 (1990). This claim is, therefore, barred.

The final contention Dawson makes concerning jury selection is that four prospective jurors were improperly excused for cause. Dawson cites *Gray v. Mississippi,* 481 U.S. 648, 107 S.Ct. 2045, 95 L.Ed.2d 622 (1987). Dawson did not object during the selection process nor did he raise the issue on appeal in *Dawson II.* This claim is thus barred by Rule 61(i)(3) absent a showing of both cause for the procedural default and prejudice. *E.g., Younger,* 580 A.2d at 555–56. Dawson argues that failure by appellate counsel to "even consider these claims" satisfies the cause prong of any waiver analysis. The Court finds that, given the record of the jury selection in this case, counsel's failure to raise this issue on appeal did not constitute ineffective assistance of counsel under the standard set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

■ Dawson has not claimed that the relevant voir dire questions were inconsistent with the applicable legal standard, set out in *Witt,* 469 U.S. at 431–32, 105 S.Ct. at 855–56;

*Adams v. Texas,* 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980); *DeShields,* 534 A.2d at 634; and *Riley v. State,* Del.Supr., 496 A.2d 997, 1002–04 (1985). Furthermore, during voir dire Dawson did not object to the exclusion of the prospective jurors, Napolski, Bradley, Marshall or Macturk, or request additional questions of these potential jurors. No ambiguity in their responses regarding their views on the death penalty was detected by the Court or either side. *See Witt,* 469 U.S. at 431 n. 11, 434–35, 105 S.Ct. at 855 n. 11, 857–58. The Court's decision to excuse these jurors for cause was based on its first-hand observation of them. A decision of that kind is given substantial deference by appellate courts. *Witt,* 469 U.S. at 434, 105 S.Ct. at 857; *Ferguson v. State,* Del.Supr., 642 A.2d 772, 777 (1994); *DeShields,* 534 A.2d at 636. The Court simply is not persuaded that its decision to excuse was erroneous.

■ Dawson contends that prospective juror Ruth Marshall's answers indicate that she could apply the law as charged. However, when asked if she could "answer the penalty hearing questions no if the evidence so warrants, regardless of your feelings about the death penalty," she responded, "I don't know." Furthermore, Marshall responded in the affirmative when asked if she would automatically vote that the mitigating circumstances outweighed the aggravating circumstances because of her beliefs about the death penalty. There was no ambiguity in Marshall's response. She was properly excused for cause. Consequently, failure to have raised the issue at trial or on direct appeal was not ineffective assistance of counsel. Dawson's claim is procedurally barred by Rule 61(i)(3).

### D. The Prosecutors' Argument

■ Dawson contends that the prosecutors violated his constitutional rights by making prejudicial comments to the jury during closing statements in both the 1988 trial and the 1993 penalty hearing. Dawson did not object to either of the closing arguments and did not raise the claims on appeal in *Dawson I* or *Dawson II.* As a result, review of this claim is barred by Rule 61(i)(3), unless Daw-

son shows (1) cause for failing to raise the issue earlier and (2) actual prejudice: *E.g., Saunders v. State*, Del.Supr., 602 A.2d 623, 624–25 (1984); *Younger v. State*, Del.Supr., 580 A.2d 552, 555–56 (1990). Dawson has not shown that his counsel was ineffective nor has he attempted to show that some external impediment prevented counsel from raising the argument earlier. He has failed to demonstrate cause for his procedural default, and his claim is barred by Rule 61(i)(3). *E.g., Younger*, 580 A.2d at 556.

Additionally, Dawson has failed to establish prejudice stemming from the remarks. The first statement Dawson challenges is the prosecutor's use of "we," as a statement made in the context of the prosecution's explanation that the State's theory was that Kisner's death was intentional. The prosecutor did not place the prestige of the Attorney General's Office behind the State's witness nor did he state that he had extra-judicial information supporting conviction. Finally, a curative instruction was promptly given by the Court which adequately cured any prejudicial effect the comment may have had. *E.g., Kornbluth v. State*, Del.Supr., 580 A.2d 556, 560 (1990); *Brokenbrough v. State*, Del. Supr., 522 A.2d 851, 857 (1987).

▇▇ The second statement Dawson attacks read in context is merely the prosecutor asking the jury to use common sense in evaluating the evidence and not to engage in speculation. Dawson highlights comments out of context. First, he cites to the statement, "Both sides owe you the duty of giving arguments that make sense that are supported by evidence and are not refuted by other evidence." Dawson skips two paragraphs and highlights the following comments, "So we are still here and we are still asking ourselves why, why, why?". Dawson asserts these comments are in violation of the rule set out in *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).

▇▇ Dawson has not established that these comments were manifestly intended to reflect on his silence or that the remarks were of such a nature that the jury would naturally and necessarily take them to be a comment on his failure to testify. *E.g.,*

*DeShields v. Snyder*, 829 F.Supp. 676, 684 (D.Del.1993). There is no *Griffin* violation when the prosecutor's comment is directed toward the lack of evidence supporting the defense theory of the case when the defendant has not testified. *E.g., United States v. Glantz*, 810 F.2d 316, 323 (1st Cir.1987); *Coleman v. Brown*, 802 F.2d 1227, 1237–38 (10th Cir.1986); *United States v. Nabors*, 762 F.2d 642, 649–50 (8th Cir.1985); *Bontempo v. Fenton*, 692 F.2d 954, 958–59 (3rd Cir.1982). The prosecutor's comment here was within this standard. Furthermore, even if the jury had the incorrect impression that the remark was directed towards Dawson's decision not to testify, the Court instructed the jury that the State had the burden of proof and that no adverse influence was to be drawn from Dawson's decision not to testify. This cured any possible confusion on that issue. *E.g., Nabors*, 762 F.2d at 650; *United States v. Adamo*, 534 F.2d 31, 40 (3d Cir.1976); *Boyer v. State*, Del.Supr., 436 A.2d 1118, 1123 (1981). Finally, Dawson reads the prosecutor's rhetorical question, "so we are still here and we are still asking ourselves why, why, why?" out of context. The remark simply underscored the senseless and needless nature of Kisner's death, and it was not a comment directed at Dawson's decision not to testify.

▇▇ Next, Dawson asserts the prosecutor's final remark in rebuttal, urging the jury to, "Tell everyone that he is a murderer," was improper. After reviewing the evidence, it is clear that this remark was proper, was fully supported by the evidence and as such was not unfairly prejudicial. *State v. Brazzell*, 38 Conn.Supp. 695, 460 A.2d 1306, 1308 (1983); *Commonwealth v. Marshall*, 523 Pa. 556, 568 A.2d 590, 597 (1989).

▇▇ Dawson has also not established prejudice concerning remarks made by the prosecutor in the 1993 penalty hearing. He first asserted that the remark that, "A life sentence for this defendant would be like sending him to his room. It would be a matter of time before . . . he would be transferred out of max into medium, and who knows, maybe he could even have his own cell back." This comment was proper as it

was directed toward Dawson's non-amenability to further imprisonment and to his being an escape risk. Both these concerns implicate future dangerousness, his capacity for rehabilitation and the specific deterrent effect of the death penalty and were proper. *Coleman,* 802 F.2d at 1239; *Tucker v. Kemp,* 762 F.2d 1496, 1507 (11th Cir.1985); *Brooks v. Kemp,* 762 F.2d 1383, 1406 & n. 39, 1411 n. 46 (11th Cir.1985).

■ Finally, Dawson complains that the remark that, "there was no lawyer to speak on Marie's behalf, no judge to rule on objection[s], no jury to consider whether or not her aggravating circumstances outweighed her mitigating circumstances. There was only David Dawson and Marie Kisner," was improper. When read in context the remark served to remind the jury to focus on the evidence. In this light, the comment was proper. *Jeffries v. Blodgett,* 988 F.2d 923, 934 (9th Cir.1993); *Parks v. Saffle,* 925 F.2d 366, 369 (10th Cir.1991). *See also California v. Brown,* 479 U.S. 538, 543, 107 S.Ct. 837, 840, 93 L.Ed.2d 934 (1987). Furthermore, the jury was specifically instructed that it was to answer the § 4209 interrogatories based solely on the evidence they heard and the instructions on the applicable law. The Court instructed the jurors that they must not be swayed by passion, prejudice, public opinion or public feeling. This cured any prejudicial effect the comment may have had. Dawson has failed to establish either cause or prejudice as required under Rule 61(i)(3). These claims are barred.

### E. Ineffective Assistance of Counsel Issues

Dawson asserts that his trial counsel were ineffective in that they: (a) did not have a defense expert examine the brown hair of Caucasian origin found at the scene and did not prepare for cross-examination of the F.B.I. hair and fiber analyst; (b) did not adequately consult with him regarding his decision to testify on his behalf during the trial; (c) did not adequately determine and develop Dawson's version of events and did not adequately consult with him about the facts of the case; (d) did not fully use available discovery procedures; (e) did not make appropriate pre-trial motions and objections during the trial; (f) referred to Dawson's statement in opening, but later did not introduce it after the State failed to introduce it; (g) did not properly cross-examine the victim's son, Brian Kisner; and (h) did not have a unified theory of the defense case.

■ Dawson first asserts that the failure of his trial counsel to have a defense expert examine a brown hair of Caucasian origin found at the scene and to properly prepare for cross-examination of the F.B.I. hair and fiber analyst was ineffective assistance of counsel. Dawson has neither explained how the cross-examination was defective nor what additional facts could have been established from further questioning. This alone requires dismissal of the claim. *Flamer,* 585 A.2d at 755. Further, Dawson has not alleged or substantiated how the asserted shortcomings in cross-examination affected the result of the trial. Finally, the Court accepts the testimony of Dawson's trial counsel, that Dawson told him that he split from the other three escapees shortly after the breakout and went alone to the Kisner residence. Based on this statement by Dawson, it was reasonable for trial counsel not to have the hair compared to the three other escapees. *Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066–67. Dawson's mere speculation that test results would be favorable does not, in the absence of specific affirmative showing of the nature of the missing evidence, establish any prejudice from trial counsel's tactical decision. *Anderson v. Collins,* 18 F.3d 1208, 1221 (5th Cir.1994) (citing, *United States ex rel. Partee v. Lane,* 926 F.2d 694, 701 (7th Cir.1991)).

Next, Dawson asserts that trial counsel did not adequately consult with him regarding his decision to testify on his behalf during the trial. The Court accepts the affidavit of defense counsel to the effect that he discussed with Dawson his choice of testifying or not testifying on several occasions. Counsel sent Dawson a letter detailing what was involved in his choice of whether or not to testify. Further, Dawson signed an affidavit stating that he understood counsel's letter and that he did not wish to testify at trial, however, "if I change my mind at any time, I

agree to tell my lawyers ... immediately." Additionally, Dawson has not demonstrated a reasonable probability that his own testimony, which he now states he wanted to give, would have changed the outcome.

■ Dawson asserts that defense counsel did not adequately determine and develop his version of events and did not adequately consult with him about the facts of the case. However, this contention is not supported by the record. The record shows that defense counsel investigated the case carefully. After careful consideration of Dawson's claims, the Court is not persuaded that defense counsel's presentation and preparation was deficient under *Strickland.* Nor has Dawson demonstrated what evidence counsel would have discovered or introduced that would have helped the defense. *Otey v. Grammer,* 859 F.2d 575, 577–78 (8th Cir.1988); *Schwander v. Blackburn,* 750 F.2d 494, 500 (5th Cir.1985); *Neal v. Grammer,* 769 F.Supp. 1523, 1527 (D.Neb.1991) (citing cases), *aff'd,* 975 F.2d 463 (8th Cir.1992). Dawson's conclusory allegations are insufficient to support his claim. *Neal,* 769 F.Supp. at 1527; *United States ex rel. Sheppard v. Roth,* 762 F.Supp. 190, 195 (N.D.Ill.1991). This claim is without merit.

■ Dawson challenges defense counsel's failure to fully use certain discovery procedures and charges that his counsel failed to make appropriate pre-trial motions and objections during trial. The record does not support these contentions. Nor has Dawson alleged or substantiated how the supposed shortcomings in the defense discovery methods affected the trial. Dawson has not specified the basis for any objections that counsel should have made, warranting dismissal of his claim. *United States v. Brown,* 739 F.2d 1136, 1147 (7th Cir.1984). After carefully reviewing the record, the Court is not persuaded that defense counsel's preparation or use of discovery procedures was deficient under *Strickland.*

■ Dawson specifically claims that defense counsel's representation was deficient for failure to sever count 15 of the indictment, charging Dawson with possession of a deadly weapon by a person prohibited. Given that the jury would necessarily be aware that Dawson had prior criminal convictions by virtue of count 13, charging him with murdering Kisner in furtherance of the commission of escape after conviction, the Court finds no prejudice from counsel's failure to move to sever count 15.

■ Next, Dawson alleges that by mentioning in the opening statement Dawson's statement to correctional officers, defense counsel was ineffective because the statement was never introduced. The Court accepts as reasonable counsel's belief that the State would introduce the statement, given the State's intense opposition to the defense motion to suppress. The suppression hearing was immediately before opening statements. Trial counsel's belief and his decision to make the reference was reasonable under *Strickland.* Furthermore, Dawson has not established prejudice.

Dawson's next attack is on trial counsel's cross-examination of Brian Kisner. The Court accepts trial counsel's explanation that he believed he had a duty to Dawson to explore Brian's story carefully. After reviewing the record, the Court is unpersuaded that counsel's cross-examination was deficient under *Strickland.* Nor has Dawson established prejudice.

■ Dawson's final claim of ineffective assistance of counsel is that trial counsel did not have a unified theory of the defense case. After a complete review of the trial and expanded record, the Court finds that trial counsel's strategy to ask sufficient questions so as to create a reasonable doubt in the minds of the jury was not unreasonable or deficient under *Strickland. Flamer,* 585 A.2d at 755–56. Furthermore, Dawson has failed to offer an alternative theory for his defense which would have been as good (or better). Dawson has not established prejudice.

## F. Capital Punishment Issues

Dawson contends that 11 *Del.C.* § 4209 is unconstitutional and/or preempted by federal law because: (1) it fails to provide the Superior Court with any standards as to how the Court is to be guided by the jury's response

to the two statutory questions; (2) death by lethal injection offends evolving standards of decency; (3) the State law providing for execution by lethal injection is preempted by federal law and; (4) the application of the 1991 amendment to 11 *Del.C.* § 4209 to his second penalty hearing violated the *ex post facto* clause of the State and Federal Constitutions. Each of these claims must be rejected under settled State and Federal Law.

 Dawson's first contention, that § 4209 fails to provide any standards for the Court to be guided by the jury's response, is foreclosed by the United States Supreme Court's recent opinion in *Harris v. Alabama*, ― U.S. ―, 115 S.Ct. 1031, 130 L.Ed.2d 1004 (1995). Under *Harris*, "[t]he Eighth Amendment does not require the State to define the weight the sentencing judge must accord to an advisory jury verdict." *Id.* at ―, 115 S.Ct. at 1036. Additionally, the Court had already determined to give "great weight" to the jury's recommendation. The Court, therefore, rejects Dawson's claim that the sentencing procedure is arbitrary.

 Dawson's second contention that the death penalty constitutes cruel and unusual punishment because lethal injection offends evolving standards of decency is procedurally barred because Dawson failed to raise this claim on appeal in either *Dawson I or II*. At the time of his sentencing only lethal injection was available as an execution method and Dawson's failure to have raised this claim earlier bars the claim absent a demonstration of cause and prejudice. *Compare State v. Deputy*, Del.Supr., 644 A.2d 411, 417 (1994) *aff'd*, Del.Supr., No. 225, 1994, Horsey, J., 1994 WL 285767 (June 21, 1994) (Order). Dawson has not shown cause for his failure to have raised this issue. Furthermore, given that this Court rejected the identical claim in *Deputy*, Dawson cannot establish actual prejudice. *See Deputy*, 644 A.2d at 420–22. *Accord Deputy v. Taylor*, No. 94–339–CON (D.Del. June 22, 1994).

Dawson next asserts that State law providing for execution by means of lethal injection is preempted by federal law. Again Dawson's failure to have raised this claim in either *Dawson I or II* bars relief absent cause and prejudice. Dawson has not shown cause for the default nor can he establish actual prejudice. The identical claim has been rejected by this Court in *Deputy*. 644 A.2d at 417–20. *Accord Deputy v. Taylor, supra.*

Finally, Dawson contends that the application of the 1991 amendment to § 4209 to his second penalty hearing violated the *ex post facto* clause of the State and Federal Constitutions. However, the Delaware Supreme Court, adhering to *State v. Cohen*, Del.Supr., 604 A.2d 846 (1992), decided the identical argument on appeal. *Dawson II*, 637 A.2d at 60–61. Because the issue has been previously decided, further consideration is barred by Rule 61(i)(4). *Riley v. State*, Del.Supr., 585 A.2d 719, 721 (1990). See *Younger*, 580 A.2d at 556. Since Dawson has not shown that "subsequent legal developments have revealed that the trial court lacked the authority to convict or punish him," this claim must be denied. *Flamer v. State*, Del.Supr., 585 A.2d 736, 746 (1990).

### G. Felony Murder Issue

Dawson asserts that his death sentence for felony murder should be reversed because the felony murder statutes under which he was convicted, 11 *Del.C.* § 636(a)(2) (reckless felony murder based on killing Mrs. Kisner during a commission of a burglary) and 11 *Del.C.* § 636(a)(6) (criminally negligent felony murder based on killing Mrs. Kisner during the commission of first degree robbery), fail to adequately narrow the group of death-eligible defendants. Dawson contends that, because felony murder automatically creates an aggravating circumstance, there is no narrowing and thus the statutes punish non-intentional murder disproportionately more harshly than intentional murder.

Dawson's claim is not justiciable under the concurrent sentence doctrine. While concurrent jail sentences are not available under Delaware law, 11 *Del.C.* § 3901(d), Dawson was given concurrent death sentences, having been convicted of four counts of first degree murder under Subsections 636(a)(1), (2), (6), and (7). Because Dawson was ordered to be executed at the same time for

the four counts, the sentences are necessarily concurrent ones.

 Dawson's collateral attack only reaches two of the four concurrent sentences. As a result, sound prudential limitations on judicial decision-making renders consideration of his claim inappropriate under the concurrent sentence doctrine. That doctrine, "as stated by Lord Mansfield before the Declaration of Independence, is 'that if there is any one count to support the verdict, it shall stand good, notwithstanding all the rest are bad.'" *Claassen v. United States,* 142 U.S. 140, 146, 12 S.Ct. 169, 170, 35 L.Ed. 966 (1891). *Accord Kiyoshi–Hirabayashi v. United States,* 320 U.S. 81, 85, 63 S.Ct. 1375, 1378–79, 87 L.Ed. 1774 (1943); *Roviaro v. United States,* 353 U.S. 53, 56, 77 S.Ct. 623, 625–26, 1 L.Ed.2d 639 (1957); *Barenblatt v. United States,* 360 U.S. 109, 115, 79 S.Ct. 1081, 1087, 3 L.Ed.2d 1115 (1959); *United States v. Gainey,* 380 U.S. 63, 65, 85 S.Ct. 754, 756–57, 13 L.Ed.2d 658 (1965); *Benton v. Maryland,* 395 U.S. 784, 788–91, 89 S.Ct. 2056, 2059–61, 23 L.Ed.2d 707 (1969) (rule is one of judicial economy, making it "unnecessary" to review claims attacking only one of several counts which support the same sentence); *Barnes v. United States,* 412 U.S. 837, 848 n. 16, 93 S.Ct. 2357, 2364 n. 16, 37 L.Ed.2d 380 (1973). Since this rule dates to English common law before the Revolution, it is encompassed in Delaware law. *See Claudio v. State,* Del.Supr., 585 A.2d 1278, 1291 (1991) (English common law became Delaware law upon independence). Accordingly, since Dawson's other death sentences are not challenged, any "narrowing argument" cannot affect him and the Court would render nothing more than an advisory opinion if it addressed the argument.

In any event, this claim is procedurally barred by Rule 61(i)(3) as having not been raised in *Dawson I or II. Younger v. State,* Del.Supr., 580 A.2d 552, 555–56 (1990). Dawson has not established cause, nor can he show any actual prejudice. The Delaware Supreme Court and United States Court of Appeals for the Third Circuit have rejected the argument in other cases. *Deputy v. Taylor,* 19 F.3d 1485, 1500–02 (3d Cir.1994); *Jackson v. State,* Del.Supr., 643 A.2d 1360,

1381 (1994); *Ferguson v. State,* Del.Supr., 642 A.2d 772, 780–81 (1994); *Riley v. State,* Del.Supr., 496 A.2d 997, 1021 & n. 32 (1985); *Whalen v. State,* Del.Supr., 492 A.2d 552, 565–69 (1985). Dawson has not shown the Court that these precedents should not be followed on the merits. Therefore, this claim is not justiciable under the concurrent sentence doctrine and it is procedurally barred by Rule 61(i)(3).

### H. Issues Not Briefed

Dawson raised several issues in both his original *pro se* postconviction motion and his subsequent amended motion that were not briefed in detail. Dawson urges the Court not to find these claims waived. While the opinions of the Delaware Supreme Court teach that issues not briefed are deemed waived and this rule satisfies the intent of judicial economy, the Court will consider each of these claims so that there is a full adjudication of the procedural bars on the merits of his claims.

(a) Dawson argues that he was denied a fair trial because his request for a change of venue was denied. This claim was specifically raised and rejected by the State Supreme Court in *Dawson I,* 581 A.2d at 1088–91. Further consideration of the issue is barred by Rule 61(i)(4) unless reconsideration "is warranted in the interest of justice." Review of Dawson's claim offers no reason to believe that "subsequent legal development have revealed that the trial court lacked authority to convict or punish him." *Flamer,* 585 A.2d at 746. This claim is procedurally barred.

(b) Next, Dawson asserts he was denied a fair trial when his request for continuance was denied on the morning of trial. This claim is simply a restatement of his claim that the jury was not impartial, which was raised and rejected in *Dawson I,* 581 A.2d at 1088–91. Having been previously resolved, this claim is similarly barred by Rule 61(i)(4). Dawson's ability to articulate the claim differently does not require this Court to revisit the question. *Riley,* 585 A.2d at 721; *see Younger* 580 A.2d at 556. This claim is procedurally barred.

(c) Next, Dawson argues he was denied a fair trial when the jury was selected and the

trial conducted in a manner that periodically exposed the jury to inflammatory publicity. Though Dawson provides no specifics, the underlying basis of these arguments is that the jury was not impartial. This issue has, however, already been adjudicated in *Dawson I*, 581 A.2d at 1088–91 and is thus barred from further consideration; Super.Ct.Crim.R. 61(i)(4). Dawson has given the Court no reason to revisit this issue in the interests of justice.

(d) Next Dawson alleges the voir dire by the Court was not adequate to protect the jury from inflammatory publicity. This claim is yet again a restatement of the non-impartial jury issue raised in *Dawson I* and is, therefore, procedurally barred by Rule 61(i)(4).

(e) Dawson contends his rights to a fair trial and due process were violated when the Court did not sequester the jury during trial. This claim was not raised by Dawson on appeal in *Dawson I* and review of this claim is consequently barred absent a showing of cause and prejudice. Super.Ct.Crim.R. 61(i)(3). *See Younger*, 580 A.2d at 555–56; *Johnson*, 460 A.2d at 540. Dawson has failed to articulate cause for this procedural default in either his initial motion, his amended motion or in his briefing to the Court. Accordingly this claim is procedurally barred by Rule 61(i)(3). Moreover, Dawson cannot establish prejudice given that the Court adequately instructed the jury not to discuss the case with anyone, not to visit or view any place involved, and not to view or listen to reports on the case. The jury regularly confirmed its compliance with such instructions.

(f) Dawson argues his constitutional rights were violated when the jury found by a vote of 8 to 4 that the killing of Mrs. Kisner was for pecuniary gain. Dawson argues that his death sentences are invalid because they were based in part on a non-unanimous finding. Dawson did not raise this issue on appeal nor has he attempted to show cause for his procedural default. This claim is, therefore, barred. Super.Ct.Crim.R. 61(i)(3). Moreover, Dawson has shown no prejudice because there is no requirement for jury sentencing in capital cases under the Federal or State Constitution. *See Hildwin v. Flori-*

*da*, 490 U.S. 638, 640–41, 109 S.Ct. 2055, 2056–57, 104 L.Ed.2d 728 (1989); *Cohen*, 604 A.2d at 852.

(g) Dawson asserts that defense counsel was ineffective during the preparation for and presentation of the penalty phase. After careful consideration of each of Dawson's claims, the Court is not persuaded that defense counsel's preparation or presentation during the penalty phase was deficient under *Strickland.*

(h) Dawson next contends that his trial counsel was ineffective for failing to introduce a "potentially exculpatory" ring seized from him at his arrest and for failing to subpoena potentially exculpatory witnesses. Dawson, however, does not articulate how the unintroduced evidence or the unidentified, non-subpoenaed witnesses would have been exculpatory. Dawson's conclusory allegations are insufficient to support his claim for relief. *Neal*, 769 F.Supp. at 1527.

(i) Finally, Dawson contends his appellate counsel was ineffective. First, he argues appellate counsel failed to raise the issue of alleged perjury of certain State's witnesses. Dawson contends Cathy Spence perjured herself. After careful review of the record, the Court finds appellate counsel's conduct reasonable under *Strickland* because this claim of perjury would have failed on appeal. *See Tapia v. Tansy*, 926 F.2d 1554, 1563 (10th Cir.1991) (rejecting an identical claim.) Concerning perjury by other witnesses, Dawson fails to identify which witnesses supposedly committed perjury. Thus this claim is without merit. *Dixon v. State*, Del.Supr., No. 153, 1991, Holland, J., 1992 WL 21124 (Jan. 14, 1992) (Order), at 4. Second, Dawson asserts appellate counsel did not raise an issue relating to the "adequacy of the hair and fiber analysis." Since Dawson fails to explain how the evidence was deficient and offers no specifics about the "potentially exculpatory evidence," this claim is without merit.

## IV. CONCLUSION

Dawson's alleged grounds for postconviction relief are either procedurally barred or without merit. The representation of Daw-

son by his defense counsel was well within the wide range of reasonable professional assistance. The factual and legal bases for Dawson's convictions and death sentences were both sound and the evidence against him was overwhelming. Dawson's motion and amended motion for postconviction relief are **DENIED.** The date of Dawson's execu-

tion is rescheduled by the modified sentence order entered contemporaneously herewith.[5]

5. When Dawson's original death sentence was imposed, he was in Court with counsel and had an opportunity to be heard both personally and through counsel. Having found no basis whatsoever for postconviction relief, this Court has no discretion in reimposing the death sentence and Dawson's presence is not required for the limited purpose of setting a new execution date. *State v. Bailey*, Del.Supr., Cr.A. No. IK79–05–0085R1, Ridgely, P.J. (Aug. 23, 1991) *aff'd*, Del.Supr., No. 343, 1991, Horsey, J. (March 9, 1992); *Hooks v. State*, Del.Supr., 429 A.2d 1312 (1981).